**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |
|---|---|
| In re: | Chapter 11 |
| ALEA HOLDINGS US COMPANY, *et al.,*[1] | Case No. 26-90714 (CML) |
| Debtors. | (Joint Administration Requested)<br>(Emergency Hearing Requested) |

**DEBTORS' <u>EMERGENCY</u> OMNIBUS MOTION
FOR ENTRY OF INTERIM AND FINAL ORDERS
(I) AUTHORIZING THE DEBTORS TO (A) CONTINUE
TO OPERATE AND MAINTAIN THEIR EXISTING BANK ACCOUNTS
AND USE EXISTING BOOKS AND RECORDS AND PAYMENT PROCESSES;
(B) CONTINUE TO PERFORM INTERCOMPANY TRANSACTIONS AND GRANTING
ADMINISTRATIVE EXPENSE STATUS TO POST-PETITION INTERCOMPANY
TRANSACTIONS; AND (C) PAY PREPETITION TAXES AND FEES; (II)
CONFIRMING THAT THE NON-DEBTOR INSURANCE SUBSIDIARIES ARE NOT
AFFECTED OR IMPAIRED BY THE CHAPTER 11 CASES; AND (III) GRANTING
RELATED RELIEF**

**Emergency relief has been requested. Relief is requested not later than 2:30 p.m. (prevailing Central Time) on July 20, 2026.**

**If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding Paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

**A hearing will be conducted on this matter on July 20, 2026 at 2:30 p.m. (prevailing Central Time).**

**Participation at the hearing will only be permitted by an audio and video connection.**

**Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Lopez conference room number is 590153. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Lopez's home page. The meeting code is "JudgeLopez." Click the settings icon in the upper right corner and enter your name under the personal information setting.**

**Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Lopez's**

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification numbers, are: Alea Holdings US Company (6256); Alea Group Holdings (Bermuda) Ltd. (N/A); and FIN Alea LLC (7772). The Debtors' service address is 211 E. 7th Street, Suite 620, Austin, TX 78701.

**home page.  Select the case name, complete the required fields and click "Submit" to complete your appearance.**

Alea Holdings US Company ("AHUSCO"), and its debtor affiliates, as debtors and debtors in possession (collectively, the "Debtors") in the above captioned chapter 11 cases, hereby submit this omnibus motion (the "Motion").   In support of this Motion, the Debtors submit the *Declaration of Peter Kravitz in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration"),[2] filed contemporaneously herewith and incorporated herein by reference.  In further support of this Motion, the Debtors state as follows:

## Relief Requested

1.      By this Motion, the Debtors seek entry of an interim order and a final order, substantially in the forms attached hereto, granting, among other things, the following relief:

    a.   authorizing the Debtors to:

        i. operate and maintain the existing Bank Accounts (as defined below), open new accounts, and close the existing accounts as needed;

        ii. continue using their existing books and records, business forms, and payment processes;

        iii. continue Intercompany Transactions (as defined below) consistent with the Debtors' historical practices and Intercompany Relationships (as defined below), subject to the terms described herein, and granting administrative expense status to the Intercompany Transactions among the Debtors and between the Debtors and their non-Debtor affiliates; and

        iv. pay prepetition Taxes and Fees (as defined below), if any, as they may come due post-petition;

    b.   confirming that the Debtors' Insurance Subsidiaries (as defined below) are not affected or impaired by these chapter 11 cases; and

    c.   granting related relief, including scheduling a final hearing to consider approval of the Motion on a final basis.

---

[2]     Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to them in the *Declaration of Peter Kravitz in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration"), which was  filed on the date hereof and incorporated herein by reference.

2

**Jurisdiction and Venue**

2.      The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*, dated May 24, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  The Debtors confirm their consent to the Court's entry of a final order to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory and other bases for the relief in this Motion are sections 105, 345, 363, and 553 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**Background**

5.      The Debtors are holding companies, whose purpose is to hold and manage insurance subsidiaries.  The Debtors oversee their subsidiaries' performance of a variety of activities, including, but not limited to, establishing reserves, negotiating settlements, and paying outstanding insurance claims.

6.      On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under sections 101–1532 of the Bankruptcy Code with the Court.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Additional information regarding the Debtors' business, capital structure, and the circumstances preceding the Petition Date may be found in the First Day Declaration.  No party has requested the appointment of a trustee or examiner in these cases, and no statutory committee has been appointed.

**The Debtors' Limited Operations**

7.      As set forth in the First Day Declaration, the Debtors, as holding companies, operate primarily pursuant to shared services arrangements and formal and informal intercompany relationships.  AHUSCO and Alea Group Holdings (Bermuda) Ltd. ("AGHBL") maintain bank accounts for cash transactions; FIN Alea LLC generally records book entries for liabilities but does not engage in cash transactions.  No Debtor directly employs any employees, directly purchases insurance, or owns or leases any real property.  Accordingly, by this Motion, the Debtors seek authority to continue using their existing Bank Accounts (as defined below) and existing books and records and business forms, continue their intercompany relationships that are necessary to maintain their continued operations, and, out of an abundance of caution, to pay any prepetition Taxes and Fees that may come due post-petition on account of prepetition periods.

**I.      The Bank Accounts.**

8.      As of the Petition Date, the Debtors have three bank accounts (each, a "Bank Account" and together the "Bank Accounts").[3]  The Debtors have two main operating accounts maintained by AHUSCO, at Bank of America, N.A. ("BoA"), and by AGHBL, at US Customers Bank ("CB" and together with BoA, the "Banks") (each an "Operating Bank Account").  The Debtors have approximately $7,300.00 in unrestricted cash in the Operating Bank Account at CB.  The Debtors have approximately $3,141,000.00 in cash in the Operating Bank Account at BoA.  AHUSCO's Operating Bank Account at BoA is subject to a deposit account control agreement in favor of Catalina Finance LLP as collateral for prepetition secured debt.  All cash maintained in the BoA Operating Bank Account is collateral for the Prepetition Facility.

---

[3]     In addition, an escrow account through Western Alliance bank has been established to serve as the Carve-Out Account as provided in the Financing Orders.

9.      AHUSCO and AGHBL use these Operating Bank Accounts to collect and disburse cash, whether generated from borrowings, investments, or from their subsidiaries, and to pay their financial obligations, which primarily consist of payments for intercompany services, including for personnel, and professional fees.  In addition, AHUSCO uses its Operating Bank Account to make disbursements to support its subsidiaries from time to time.

10.      The Debtors' final Bank Account is maintained by AHUSCO at BoA.  This Bank Account is subject to a deposit account control agreement in favor of Catalina Finance LLP as collateral for prepetition secured debt.  The proceeds of the sales of AHUSCO's equity interests in ANAIC and NAICC, subject to approval by this Court and the closing of such sales, will be deposited in this Bank Account.[4]  This Bank Account currently has $0, and the Debtors do not anticipate any additional funds to be deposited in this account (other than the sale proceeds of the subsidiaries).

| Debtor | Cash Management Bank | Account # | Account Type |
|---|---|---|---|
| Alea Holdings US Company | Bank of America, N.A. | x2645 | Main Operating Account |
| Alea Holdings US Company | Bank of America, N.A. | x6484 | Subsidiary Sales Proceeds Account |
| Alea Group Holdings (Bermuda) Ltd. | US Customers Bank | x2719 | Main Operating Account |

11.      The Debtors incur periodic service charges and other fees in connection with the maintenance of their Bank Accounts (collectively, the "Bank Fees").  AGHBL is not charged any Bank Fees to maintain or operate its Main Operating Account and, accordingly, the Debtors do not believe there are any prepetition amounts due to CB on account of such Bank Account.  AHUSCO

---

[4]     For more information on the relationship between the Debtors and Catalina Finance LLP, see the First Day Declaration.

does, however, incur periodic Bank Fees in connection with the deposit account control agreements to which its Bank Accounts are subject, in an aggregate amount of approximately $1,980 per month.  Although the Debtors do not believe there are any prepetition amounts due to BoA, the Debtors seek authority to pay prepetition Bank Fees, if any, and continue paying the monthly Bank Fees owed to BoA, in the ordinary course on a postpetition basis.

12. As set forth more fully below, the Debtors request authorization to continue to maintain the Bank Accounts, open new accounts, and close the Bank Accounts, as needed.  In addition, the Debtors request that the relief granted by the Court with respect to the Bank Accounts extend to any new accounts opened by the Debtors, subject to appropriate notice being provided to parties in interest identified in the order granting this Motion.

## II. The Books and Records, Business Forms, and Payment Processes.

13. The Debtors maintain books and records to document their financial situation and may use certain business forms such as checks and stationery.  In particular, the Debtors maintain a general ledger and enterprise resource planning system (the "SUN System"), which records intercompany payables and receivables, as well as cash payments and receipts.  While AHUSCO does have check stock, it has not issued a physical check in several years.  The other Debtors do not have check stock.  The Debtors do not have any pre-printed stationery.

14. As set forth more fully below, the Debtors request authorization to continue using their books and records and business forms as in use immediately before the Petition Date (as may be amended or modified in the ordinary course from time to time), rather than requiring the Debtors to incur the expense and delay of creating new books and records and business forms. Additionally, the Debtors request authority to continue to make payments by ACH, wire, or other electronic transfer, rather than by paper check, and in the unlikely event AHUSCO would need to issue a paper check, the Debtors request authorization to use existing check stock.

**III.    The Debtors' Intercompany Relationships.**

15.    In the ordinary course of business, the Debtors routinely engage in intercompany transactions (collectively, the "Intercompany Transactions")[5] with one another and with their non-Debtor affiliates that result in intercompany receivables and payables (collectively, the "Intercompany Claims").   Intercompany Transactions and Intercompany Claims arise from relationships and historical practice or certain intercompany agreements (collectively, the "Intercompany Relationships") to support operations and shared service functions.  The Debtors can ascertain, trace, and account for all Intercompany Transactions through the SUN System, and the Debtors will continue to do so on a post-petition basis.

16.    In particular, AHUSCO is party to that certain service agreement (the "Administrative Service Agreement") pursuant to which it obtains services from certain of its non-Debtor affiliates.  The primary non-Debtor entity providing services to AHUSCO is Catalina U.S. Insurance Services LLC ("CUSIS"), which provides personnel, tax, and audit services, among other services.  All services are billed at-cost.[6]

17.    AHUSCO generally accrues an amount for CUSIS services on a monthly basis, and is billed by CUSIS quarterly for the actual amounts, at which time AHUSCO settles the payment in cash.  From time to time, AHUSCO may conduct a reconciliation and "true up" with other non-Debtor affiliates for services provided by CUSIS but paid by another entity that should properly be borne by AHUSCO.

---

[5]    This Motion provides an illustrative overview of the Debtors' typical Intercompany Transactions.  The relief requested herein is applicable with respect to all Intercompany Transactions and is not limited to those Intercompany Transactions specifically described.  To the extent that there are any outstanding prepetition transactions related to Intercompany Transactions not described herein, the Debtors, out of an abundance of caution, seek authority to continue such transactions.

[6]    With respect to personnel, CUSIS employs qualified individuals who may provide services to both the Debtors (and their subsidiaries) and other non-Debtor affiliates.  AHUSCO is allocated a percentage of the cost incurred by CUSIS for personnel, ranging from 10 percent to 100 percent, depending generally on the proportion of such person's work for AHUSCO (and its subsidiaries) to the work performed for other non-Debtor affiliates.

18.     The Debtors anticipate that post-petition Intercompany Transactions will continue at prepetition levels.  Given the Debtors' limited operational capacity, their ability to continue in the ordinary course would be materially and detrimentally impacted were they required to suspend Intercompany Transactions.  As set forth more fully below, the Debtors ***do not*** seek, by this Motion, to satisfy any prepetition Intercompany Claims, but rather to continue to operate via the Intercompany Relationships in the ordinary course on a post-petition basis, and to record Intercompany Claims consistent with prepetition practice.  In addition, the Debtors request that post-petition Intercompany Claims be granted administrative expense status.  This will ensure that the appropriate entity (including the Debtors) will continue to bear the ultimate responsibility for the Debtors' post-petition transactions.[7]

## IV.     The Prepetition Taxes and Fees

19.     Although almost all of their operational expenses are conducted through the Intercompany Relationships, the Debtors may be subject to a variety of business-related taxes and charges, regulatory fees, assessments and related obligations (collectively, the "Taxes and Fees").

20.     AHUSCO has not owed income taxes for several years.  However, AHUSCO does file for an income tax extension.  AHUSCO also pays franchise fees for itself and Debtor FIN Alea LLC.  In September of 2025, both AHUSCO and FIN Alea LLC redomiciled to Texas.  The Debtors believe that they are current on all Taxes and Fees; however, during the pendency of this case, certain Taxes and Fees may come due on account of a partial prepetition period, such as their Texas franchise taxes.

---

[7]     The relief requested in this Motion with respect to the post-petition Intercompany Transactions does not constitute an admission of the Debtors or any other party as to the validity, priority, or status of any prepetition Intercompany Claims or any Intercompany Transaction from which such Intercompany Claims may have arisen.

21.     The Debtors' books and records reflect that they are substantially current with the Taxes and Fees that were due and payable prior to the Petition Date.  However, to the extent that any additional prepetition amounts remain outstanding, as set forth more fully below, the Debtors request authorization to pay them in the ordinary course.

**V.      Comfort Order Regarding Insurance Subsidiaries.**

22.     In addition, the Debtors seek entry of a "comfort order" confirming that the Debtors' insurance subsidiaries SPARTA, ANAIC, and NAICC (collectively, the "Insurance Subsidiaries") are not Debtors in, and are not affected or impaired by, these chapter 11 cases.  Each Insurance Subsidiary is a separate legal entity organized and regulated under the insurance laws of its respective domiciliary jurisdiction (Connecticut, New York, and California, respectively).  The Debtors believe that it would be beneficial for this Court to confirm that:

a.  None of the Insurance Subsidiaries is a debtor in these chapter 11 cases;

b.  None of the Insurance Subsidiaries has commenced, or is the subject of, any case under the Bankruptcy Code or any other bankruptcy, insolvency, receivership, rehabilitation, liquidation, conservation, or similar proceeding;

c.  The commencement of these chapter 11 cases does not place the Insurance Subsidiaries, or their assets, businesses, or operations, under the supervision or control of the Court;

d.  Except for the Debtors' equity interests in the Insurance Subsidiaries, which constitute property of the estate under section 541 of the Bankruptcy Code, the assets, businesses, and operations of the Insurance Subsidiaries are not property of the Debtors' estates; and

e.  Neither this Motion nor any order granting the relief requested herein is intended to, or shall, (a) affect the separate corporate existence, governance, or day-to-day

9

operations of any Insurance Subsidiary; (b) impair or otherwise affect the jurisdiction or authority of any insurance regulatory authority over any Insurance Subsidiary; or (c) cause any Insurance Subsidiary, or any of its assets, to become subject to the supervision or control of the Court or to be treated as property of the Debtors' estates.

## Basis for Relief Requested

**VI.    The Court Should Approve the Debtors' Continued Use of the Bank Accounts, Books and Records, Business Forms and Payment Processes.**

23.    The *Operating Guidelines and Reporting Requirements for Debtors in Possession* (the "U.S. Trustee Guidelines") require debtors in possession to, among other things, (a) close all existing bank accounts and open new debtor in possession bank accounts at a depository that is authorized by the requirements of the Office of the United States Trustee for the Southern District of Texas (the "U.S. Trustee"); (b) establish one debtor in possession account for all estate monies required for payment of taxes, including payroll taxes; (c) physically set aside all monies required by law to be withheld from employees or collected from others for taxes; (d) open a new set of books and records as of the commencement date of the case; (e) use new business forms indicating the debtor in possession status of the chapter 11 debtor, including checks that bear the designation "debtor in possession" and reference the bankruptcy case number and type of account on such checks; and (f) make all disbursements of estate funds by check with a notation representing the reason for the disbursement.  *See* U.S. Trustee Guidelines.

24.    These requirements are intended to provide a clear line of demarcation between prepetition and post-petition transactions and operations and to prevent inadvertent payment of prepetition claims.  However, enforcement of these provisions of the U.S. Trustee Guidelines in these chapter 11 cases is unnecessary and unduly burdensome.  The Debtors are able to prevent

inadvertent payment of prepetition claims—in fact, the Debtors do not anticipate paying any prepetition claims other than potentially on account of Taxes and Fees, which will be easily ascertainable.  Maintenance of the Bank Accounts and existing books and records and business forms also ensures a continuation of the Debtors' records of cash transactions, which are maintained by the Banks in the ordinary course and by the Debtors in the SUN System.  In contrast, requiring the Debtors to close the Bank Accounts and open new bank accounts, or create a new general ledger system and payment process, would introduce an administrative burden and cost to the detriment of all creditors and parties in interest.

25.     In addition, continued use of the Bank Accounts should be permitted pursuant to section 363(c)(1) of the Bankruptcy Code, which authorizes the debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing."  11 U.S.C. § 363(c)(1).  Bankruptcy courts routinely treat requests for authority to continue utilizing existing cash management systems as a relatively "simple matter []."  *In re Baldwin-United Corp.*, 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987).

26.     Finally, payment of the Bank Fees, including prepetition Bank Fees, is appropriate in light of the material benefit of continued use of AHUSCO's Bank Accounts and in order to avoid unnecessary disruption and costly delay.

27.     Accordingly, the Debtors respectfully request that the Court authorize the Debtors to continue to maintain the Bank Accounts, pay the Bank Fees including prepetition Bank Fees, open new accounts, and/or close the Bank Accounts in the ordinary course of business, and to

continue using their books and records, business forms, and payment processes in existence as of the Petition Date.[8]

## VII.   The Court Should Authorize the Debtors to Continue their Intercompany Relationships.

28.      The Debtors seek authority to continue to engage in Intercompany Transactions, and to continue to incur and settle Intercompany Claims consistent with historical practice and the governing Intercompany Relationship, during the pendency of these chapter 11 cases.   The requested relief is in the best interests of the Debtors' estates and their creditors.   If the Intercompany Relationships were to be disrupted, the Debtors would lose access to key services and personnel provided by CUSIS, and the Debtors would be forced to incur significant time and expense to set up new systems and relationships, to the detriment of creditors and parties in interest. The Debtors could also lose access to important knowledge and efficiencies gained through the Intercompany Relationships.

29.      The Debtors *do not* seek, by this Motion, to satisfy any prepetition Intercompany Claims.   Rather, the Debtors seek to continue to operate via the Intercompany Relationships in the ordinary course on a post-petition basis only, and to record and settle as necessary post-petition Intercompany Claims consistent with prepetition practice.   The Debtors will continue to maintain records with respect to the Intercompany Relationships, including records of all Intercompany Claims generated pursuant thereto.   To ensure transparency in the process, the Debtors propose to provide periodic reports of all Intercompany Transactions with their Non-Debtor affiliates to the U.S. Trustee.

---

[8]   The Debtors request that the relief granted by the Court with respect to the Bank Accounts be extended to any new accounts opened by the Debtors, subject to appropriate notice being provided to parties in interest identified in the order granting this Motion.

12

30.     The Debtors also request that the Court grant administrative expense status to all Intercompany Claims against a Debtor that arise post-petition as a result of an Intercompany Transaction.  The Debtors submit that if Intercompany Claims are accorded such status, the appropriate entity will continue to bear the ultimate responsibility for such claims.

**VIII.   To the Extent Necessary, an Extension of Time to Comply with the Requirements of Section 345(b) of the Bankruptcy Code is Warranted.**

31.     The Debtors submit that they are in compliance with section 345(b) of the Bankruptcy Code and the U.S. Trustee Guidelines with respect to the Debtors' Bank Accounts, because the Banks are authorized depositories.  Nevertheless, to the extent the Debtors are not strictly in compliance with section 345(b) of the Bankruptcy Code, the Debtors request a forty-five (45) day (or such longer period as the U.S. Trustee may agree) extension of time to come into compliance with section 345(b) of the Bankruptcy Code and the U.S. Trustee Guidelines.

32.     Courts may waive compliance with the Bankruptcy Code section 345(b) and the U.S. Trustee Guidelines for "cause."  11 U.S.C. § 345(b).  In evaluating whether "cause" exists, courts have considered a number of factors, including (a) the sophistication of the debtor's business, (b) the size of the debtor's business operations, (c) the amount of the investments involved, (d) the bank ratings (Moody's and Standard & Poor's) of the financial institutions where the debtor in possession funds are held, (e) the complexity of the case, (f) the safeguards in place within the debtor's own business for ensuring the safety of the funds, (g) the debtor's ability to reorganize in the face of a failure of one or more of the financial institutions, (h) the benefit to the debtor, (i) the harm, if any, to the debtor, (j) the harm, if any, to the estate, and (k) the reasonableness of the debtor's request for relief from section 345(b) requirements in light of the overall circumstances of the case.  *See In re Serv. Merch. Co., Inc.*, 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999).

33.     As noted above, requiring the Debtors to close and reopen the Bank Accounts or transfer funds to other banks would be unduly burdensome to the Debtors' operations.  In light of the above factors, and particularly the low likelihood that relief is actually needed, "cause" exists to extend the time period within which the Debtors have to come into compliance with section 345(b) of the Bankruptcy Code and the U.S. Trustee Guidelines, without prejudice to further extensions or waiver.

### IX.     Payment of the Taxes and Fees as Provided Herein Is a Sound Exercise of the Debtors' Business Judgment.

34.     The Debtors seek authority to pay and remit all prepetition and post-petition obligations on account of Taxes and Fees (including any obligations subsequently determined upon audit or otherwise to be owed), including: (a) Taxes and Fees that accrue or are incurred post-petition; (b) Taxes and Fees that have accrued or were incurred prepetition but were not paid prepetition or were paid in an amount less than actually owed; (c) Taxes and Fees that the Debtors paid prepetition but were lost or otherwise not received in full by any of the Taxing Authorities; and (d) Taxes and Fees incurred for prepetition periods that become due and payable after the commencement of these chapter 11 cases.  For the avoidance of doubt, the Debtors seek authority to pay Taxes and Fees for so-called "straddle" periods.[9]

35.     Courts in the Fifth Circuit and elsewhere have recognized that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate, including an operating business's going-concern value. *See, e.g., In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002); *see also In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175–76 (Bankr. S.D.N.Y. 1989) ("The ability of a Bankruptcy Court to authorize the payment of

---

[9]     The Debtors reserve their rights with respect to the proper characterization of any "straddle" Taxes and Fees and to seek reimbursement of any portion of any payment made that ultimately is not entitled to administrative or priority treatment in these chapter 11 cases.

prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept"). In doing so, these courts acknowledge that several legal theories rooted in sections 105(a)[10] and 363(b)[11] of the Bankruptcy Code support the payment of prepetition claims.

36. The payment of prepetition Taxes and Fees on a post-petition basis, if applicable, would be appropriate, and a sound exercise of the Debtors' business judgment. Claims for certain of the Taxes and Fees are or may be priority claims entitled to payment before general unsecured claims. *See* 11 U.S.C. § 507(a)(8) (describing taxes entitled to priority treatment). Moreover, to the extent that such amounts are entitled to priority treatment under the Bankruptcy Code, the Debtors may be assessed interest and penalties if such amounts are not paid. *See* 11 U.S.C. § 507(a)(8)(G) (granting priority status to "a penalty related to a claim of a kind specified in this paragraph and in compensation for actual pecuniary loss"). Claims entitled to priority status pursuant to section 507(a)(8) of the Bankruptcy Code must be paid in full under a confirmable plan pursuant to section 1129(a)(9)(C) of the Bankruptcy Code. *See* 11 U.S.C. § 1129(a). Therefore, it is most likely that payment of any prepetition Taxes and Fees on a post-petition basis would only affect the timing of the payment for the amounts at issue and would not prejudice the rights and recoveries of junior creditors. Further, the U.S. Trustee Guidelines note that debtors

---

[10]   Under section 105(a) of the Bankruptcy Code, "the [C]ourt may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a); see also *In re CoServ, L.L.C.*, 273 B.R. at 497 (finding that sections 105 and 1107 of the Bankruptcy Code provide the authority for a debtor in possession to pay prepetition claims).

[11]   Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). Under this section, a court may authorize the payment of certain prepetition claims where a debtor "show[s] that a sound business purpose justifies such actions." *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999). Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citation omitted); see also *In re Tower Air, Inc*., 416 F.3d 229, 238 (3d Cir. 2005) (stating that "[o]vercoming the presumptions of the business judgment rule on the merits is a near-Herculean task").

should pay all tax obligations arising after the filing of the petition in full when due. *See, e.g., Region 7 Guidelines for Debtors-in-Possession.*

37.     Accordingly, the Debtors request that the Court grant the Debtors authority to pay the prepetition Taxes and Fees as provided herein.

## Processing of Checks and Electronic Fund Transfers

38.     With respect to the payment relief requested by this Motion, the only prepetition claims the Debtors seek authority to pay are those on account of Taxes and Fees and Bank Fees, if applicable. The Debtors have sufficient funds to pay any prepetition Taxes and Fees and Bank Fees in the ordinary course of business by virtue of anticipated access to cash collateral. The Debtors believe that checks or electronic fund transfer requests, other than those relating to authorized payments, will not be honored inadvertently. The Debtors request that the Court authorize and direct the Banks, when requested by the Debtors, to receive, process, honor, and pay any and all checks or electronic fund transfer requests in respect of the relief requested in this Motion.

39.     The Debtors also request, to the extent the Banks honor a prepetition check or other item drawn on any account that is the subject of this Motion, either (a) at the direction of the Debtors, (b) in a good-faith belief that the Court has authorized such prepetition check or item to be honored, or (c) as the result of an innocent mistake made despite implementation of customary item handling procedures, the Banks will not be deemed to be liable to the Debtors or to their estates on account of such prepetition check or other item honored post-petition. Such relief is reasonable and appropriate because the Banks are not in a position to independently verify or audit whether the Debtors may pay a particular item in accordance with an order by this Court or otherwise.

**Emergency Consideration**

40.      The Debtors request emergency consideration of this Motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first twenty-one (21) days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm."   The failure to receive the requested relief during the first twenty-one (21) days of these chapter 11 cases would disrupt the Debtors' operations and significantly impact the Debtors' ability to swiftly and efficiently administer these chapter 11 cases for the benefit of all stakeholders.  Accordingly, the Debtors have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and request that the Court approve the relief requested in this Motion on an emergency basis.

**Request for Bankruptcy Rule 6004 Waivers**

41.      The Debtors request a waiver of any applicable notice requirements under Bankruptcy Rule 6004(a) and any stay of the order granting the relief requested herein pursuant to Bankruptcy Rule 6004(h).   The relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors' ongoing operations and value-maximization process. Accordingly, ample cause exists to justify the waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and such stay apply.

**Reservation of Rights**

42.      Nothing contained herein or any action taken pursuant to the relief requested is intended to be or shall be construed as (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' or any party in interest's rights to dispute the amount of, basis for, or validity of any claim or interest under applicable law or nonbankruptcy law; (c) a promise or requirement to pay any claim; (d) a waiver of the Debtors' or any other party in

17

interest's rights under the Bankruptcy Code or any other applicable law; (e) a request for or granting of approval for assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code; or (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' or any party in interest's rights to subsequently dispute such claim.

### Notice

43.    Notice of this Motion has been provided to: (a) the Office of the U.S. Trustee; (b) the holders of the thirty (30) largest unsecured claims against the Debtors; (c) counsel to the Plan Sponsor; (d) counsel to the Consenting Capital Securities Holders; (e) the Banks; (f) the United States Attorney's Office for the Southern District of Texas; (g) the Internal Revenue Service; (h) the state attorneys general for states in which the Debtors conduct business; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002 and any other party entitled to notice pursuant to Bankruptcy Local Rule 9013-1(d).   The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

[*Remainder of page intentionally left blank*]

18

WHEREFORE, the Debtors request entry of an interim order and final order, substantially in the form attached hereto, granting the relief requested herein and granting such other relief as is just and proper.

Date: July 19, 2026
Houston, Texas

/s/ *Duston K. McFaul*

**SIDLEY AUSTIN LLP**
Duston K. McFaul (TX Bar No. 24003309)
1000 Louisiana Street, Suite 5900
Houston, Texas 77002
Telephone: (713) 495-4500
Facsimile:  (713) 495-7799
Email: dmcfaul@sidley.com

*and*

Stephen E. Hessler (*pro hac vice* pending)
Ameneh Bordi (*pro hac vice* pending)
Jonathan E. Mitnick (*pro hac vice* pending)
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599
Email: shessler@sidley.com
        abordi@sidley.com
        jemitnick@sidley.com

*Proposed Counsel to the Debtors and
Debtors in Possession*

## Certificate of Accuracy

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

/s/ Ameneh Bordi
Ameneh Bordi

## Certificate of Service

I certify that on July 19, 2026, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/ Ameneh Bordi
Ameneh Bordi

1