**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |
|---|---|
| In re: | Chapter 11 |
| ALEA HOLDINGS US COMPANY, et al.,[1] | Case No. 26-90714 (CML) |
| Debtors. | (Joint Administration Requested) |

**DISCLOSURE STATEMENT FOR THE JOINT CHAPTER 11 PLAN OF REORGANIZATION FOR ALEA HOLDINGS US COMPANY AND ITS DEBTOR AFFILIATES**

**SIDLEY AUSTIN LLP**
Duston K. McFaul (TX Bar No. 24003309)
1000 Louisiana Street, Suite 5900
Houston, Texas 77002
Telephone:     (713) 495-4500
Facsimile:     (713) 495-7799
Email:     dmcfaul@sidley.com

**SIDLEY AUSTIN LLP**
Stephen E. Hessler (*pro hac vice* pending)
Ameneh Bordi (*pro hac vice* pending)
Jonathan E. Mitnick (*pro hac vice* pending)
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599
Email: shessler@sidley.com
          abordi@sidley.com
          jemitnick@sidley.com

*Proposed Counsel to the Debtors
and Debtors in Possession*

---

[1]     The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification numbers, are: Alea Holdings US Company (6256); Alea Group Holdings (Bermuda) Ltd. (N/A); and FIN Alea LLC, (7772). The Debtors' service address is 211 E. 7th Street, Suite 620, Austin, TX 78701.

This disclosure statement (this "<u>Disclosure Statement</u>") provides information regarding the *Joint Chapter 11 Plan of Reorganization for Alea Holdings US Company and Its Debtor Affiliates* (as may be amended, supplemented, or otherwise modified from time to time, the "<u>Plan</u>"),[2] for which the Debtors will seek confirmation by the Bankruptcy Court. A copy of the Plan is attached hereto as <u>Exhibit A</u> and is incorporated herein by reference. The Debtors are providing the information in this Disclosure Statement to certain Holders of Claims for the purpose of soliciting votes to accept or reject the Plan.

The Debtors urge each Holder of a Claim or Interest to consult with its own advisors with respect to any legal, financial, securities, tax, or business advice in reviewing this Disclosure Statement, the Plan, and each proposed transaction contemplated by the Plan.

The Debtors strongly encourage Holders of Claims in Classes 3 and 4 to read this Disclosure Statement (including the Risk Factors described in Article V hereof), and the Plan in their entirety before voting to accept or reject the Plan. Assuming the requisite acceptances of the Plan are obtained, the Debtors will seek the Bankruptcy Court's approval of the Plan at the Confirmation Hearing.

---

**<u>RECOMMENDATION BY THE DEBTORS</u>**

EACH DEBTOR'S BOARD OF DIRECTORS OR MEMBERS, AS APPLICABLE, HAS APPROVED THE TRANSACTIONS CONTEMPLATED BY THE PLAN AND DESCRIBED IN THIS DISCLOSURE STATEMENT, AND EACH DEBTOR BELIEVES THAT THE COMPROMISES CONTEMPLATED UNDER THE PLAN ARE FAIR AND EQUITABLE, MAXIMIZE THE VALUE OF EACH OF THE DEBTORS' ESTATES, AND PROVIDE THE BEST RECOVERY TO STAKEHOLDERS. EACH OF THE DEBTORS THEREFORE STRONGLY RECOMMEND THAT ALL HOLDERS OF CLAIMS WHOSE VOTES ARE BEING SOLICITED SUBMIT BALLOTS TO <u>ACCEPT</u> THE PLAN BY RETURNING THEIR BALLOTS SO AS TO BE <u>ACTUALLY RECEIVED</u> BY THE CLAIMS AND BALLOTING AGENT BY NO LATER THAN SEPTEMBER 2, 2026 <u>AT 4:00 P.M. (PREVAILING CENTRAL TIME)</u> PURSUANT TO THE INSTRUCTIONS SET FORTH HEREIN AND ON THE BALLOT.

---

[2]  Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan. The summary of the Plan provided herein is qualified in its entirety by reference to the Plan. In the case of any inconsistency between the Disclosure Statement and the Plan, the Plan will govern.

**IMPORTANT INFORMATION REGARDING THE DISCLOSURE STATEMENT. PLEASE READ.**

The Debtors are providing the information in this Disclosure Statement to Holders of Claims for purposes of soliciting votes to accept or reject the *Joint Chapter 11 Plan of Reorganization for Alea Holdings US Company and Its Debtor Affiliates*. Nothing in this Disclosure Statement may be relied upon or used by any entity for any other purpose. Before deciding whether to vote for or against the Plan, each Holder entitled to vote should read the Plan and this Disclosure Statement in their entirety, and carefully consider all of the information in this Disclosure Statement, including the risk factors described in Article V herein.

Holders of Claims or Interests should not construe the contents of this Disclosure Statement as providing any legal, business, financial, or tax advice. The Debtors urge each Holder of a Claim or Interest to consult with its own advisors with respect to any legal, financial, securities, tax, or business advice in reviewing this Disclosure Statement, the plan, and the proposed transactions contemplated thereby. Furthermore, the Bankruptcy Court's conditional approval of the adequacy of the information contained in this Disclosure Statement does not constitute the Bankruptcy Court's approval of the Plan.

This Disclosure Statement contains, among other things, summaries of the Plan, certain statutory provisions, and certain events and anticipated events in the chapter 11 cases. Although the Debtors believe that these summaries are fair and accurate, these summaries are qualified in their entirety to the extent that they do not set forth the entire text of such documents or statutory provisions or every detail of such events. In the event of any inconsistency or discrepancy between a description in this Disclosure Statement and the terms and provisions of the plan or any other documents incorporated herein by reference, the plan or such other documents will govern for all purposes. Factual information contained in this Disclosure Statement has been provided by the Debtors' management except where otherwise specifically noted. The Debtors do not represent or warrant that the information contained herein or attached hereto is without any material inaccuracy or omission. The statements contained in this Disclosure Statement are statements of the Debtors for the purposes of this Disclosure Statement only, and shall not be deemed representations, warranties, admissions, stipulations, or statements of the Debtors or any other party in any capacity for any other reason.

In preparing this Disclosure Statement, the Debtors relied on financial data derived from the Debtors' books and records and on various assumptions regarding the Debtors' businesses. While the Debtors believe that such financial information fairly reflects the financial condition of the Debtors as of the date hereof and that the assumptions regarding future events reflect reasonable business judgments, no representations or warranties are made as to the accuracy of the financial information contained herein or assumptions regarding the Debtors' businesses and their future results and operations. The Debtors expressly caution readers not to place undue reliance on any forward-looking statements contained herein.

iii

**This Disclosure Statement does not constitute, and may not be construed as, an admission of fact, liability, stipulation, or waiver. The Debtors or any other authorized party may seek to investigate, file, and prosecute claims, and may object to claims after the confirmation or effective date of the plan irrespective of whether this Disclosure Statement identifies any such claims or objections to claims.**

**The Debtors are making the statements and providing the financial information contained in this Disclosure Statement as of the date hereof, unless otherwise specifically noted. Although the Debtors may subsequently update the information in this Disclosure Statement, the Debtors have no affirmative duty to do so, and expressly disclaim any duty to publicly update any forward-looking statements, whether as a result of new information, future events, or otherwise. Any statements in this Disclosure Statement concerning the provisions of any document are not necessarily complete, and in each instance reference is made to such document for the full text thereof. Holders of Claims or Interests reviewing this Disclosure Statement should not infer that, at the time of their review, the facts set forth herein have not changed since this Disclosure Statement was filed. Information contained herein is subject to completion, modification, or amendment. The Debtors reserve the right to file an amended or modified Plan and related Disclosure Statement from time to time, subject to the consent rights set forth in the Restructuring Support Agreement.**

**The Debtors have not authorized any entity to give any information about or concerning the Plan other than that which is contained in this Disclosure Statement. The Debtors have not authorized any representations concerning the Debtors or the value of their property other than as set forth in this Disclosure Statement.**

**If the Plan is confirmed by the Bankruptcy Court and the Effective Date occurs, all Holders of Claims or Interests (including those Holders of Claims or Interests who do not submit ballots to accept or reject the Plan, who vote to reject the Plan, or who are not entitled to vote on the Plan) will be bound by the terms of the Plan and the restructuring transactions contemplated thereby.**

**The confirmation and effectiveness of the Plan are subject to certain material conditions precedent described herein and set forth in Article VIII of the Plan. There is no assurance that the plan will be confirmed, or if confirmed, that the conditions required to be satisfied for the plan to go effective will be satisfied (or waived).**

**The Bankruptcy Court's approval of this Disclosure Statement does not constitute a guarantee by the Bankruptcy Court of the accuracy or completeness of the information contained herein or an endorsement by the Bankruptcy Court of the merits of the Plan.**

**This Disclosure Statement has been prepared in accordance with section 1125 of the Bankruptcy Code and Bankruptcy Rule 3016(b) and is not necessarily prepared in accordance with federal or state securities laws or other similar laws. This Disclosure Statement has not been approved or disapproved by the United States Securities and Exchange Commission (the "SEC") or any similar federal, state, local, or foreign regulatory agency, nor has the SEC or any other agency passed upon the accuracy or adequacy of the**

**statements contained in this Disclosure Statement. Any representation to the contrary is a criminal offense.**

**The Debtors have sought to ensure the accuracy of the financial information provided in this Disclosure Statement; however, the financial information contained in this Disclosure Statement or incorporated herein by reference has not been, and will not be, audited or reviewed by the Debtors' independent auditors unless explicitly provided otherwise herein.**

v

**TABLE OF CONTENTS**

ARTICLE I. OVERVIEW OF THE PLAN ................................................................................. 1

    A.   Introduction. ............................................................................................................ 1

    B.   The Plan. ................................................................................................................. 1

    C.   The Adequacy of This Disclosure Statement. ........................................................ 2

    D.   Summary of Classes and Treatment of Claims or Interests. ................................... 2

    E.   Key Dates in the Chapter 11 Cases ........................................................................ 4

ARTICLE II. QUESTIONS AND ANSWERS REGARDING THIS  DISCLOSURE
STATEMENT AND THE PLAN ............................................................................................. 5

    A.   What is chapter 11? ................................................................................................. 5

    B.   Why are the Debtors sending me this Disclosure Statement? ............................... 5

    C.   Am I entitled to vote on the Plan? ......................................................................... 5

    D.   What will I receive from the Debtors if the Plan is consummated? ....................... 6

    E.   What will I receive from the Debtors if I hold an Allowed Administrative Claim or a
        Priority Tax Claim? ................................................................................................ 6

    F.   Are any regulatory approvals required to consummate the Plan? ......................... 6

    G.   What happens to my recovery if the Plan is not confirmed or does not go effective? ....... 6

    H.   If the Plan provides that I get a distribution, do I get it upon Confirmation or when the
        Plan goes effective, and what is meant by "Confirmation," "Effective Date," and
        "Consummation"? .................................................................................................. 6

    I.   What are the sources of Cash and other consideration required to fund the Plan? ............. 7

    J.   Is there potential litigation related to the Plan? .................................................... 7

    K.   Does the Plan preserve Causes of Action? ............................................................ 7

    L.   Will there be releases, exculpation, and injunction granted to parties in interest as part of
        the Plan? ................................................................................................................. 7

    M.   When is the deadline to vote on the Plan? ............................................................ 9

    N.   How do I vote on the Plan? .................................................................................... 9

    O.   Why is the Bankruptcy Court holding a Confirmation Hearing? ......................... 9

    P.   What is the effect of the Confirmation Hearing? ................................................ 10

    Q.   When is the Confirmation Hearing? .................................................................... 10

    R.   Who do I contact if I have additional questions with respect to this Disclosure Statement
        or the Plan? .......................................................................................................... 10

    S.   Do the Debtors recommend voting in favor of the Plan? .................................... 10

    T.   Who supports the Plan? ........................................................................................ 11

ARTICLE III. SOLICITATION PROCEDURES AND PLAN CONFIRMATION
REQUIREMENTS......................................................................................................... 11

    A.    Solicitation Package.................................................................................... 11

    B.    Non-Voting Status Package ....................................................................... 11

    C.    Voting Procedures and Requirements........................................................ 12

    D.    Plan Objection Deadline............................................................................. 12

    E.    Confirmation Hearing. ............................................................................... 13

    F.    Confirmation. ............................................................................................. 13

    G.    Acceptance. ................................................................................................ 14

    H.    Feasibility. ................................................................................................. 14

    I.    Best Interests Test; Liquidation Analysis. ................................................ 14

    J.    Compliance with Applicable Provisions of the Bankruptcy Code. ................ 14

    K.    Alternatives to Confirmation and Consummation of the Plan..................... 15

    L.    Releases by the Debtors and Third Parties Set Forth in the Plan................... 15

ARTICLE IV. CHART OF RELEVANT PLAN PROVISIONS............................................... 15

ARTICLE V. RISK FACTORS.......................................................................................... 17

    A.    Bankruptcy Law Considerations................................................................ 17

    1.    Parties in Interest May Object to the Plan's Classification of Claims and Interests...... 18

    2.    The Debtors May Object to the Amount or Classification of a Claim. ......................... 18

    3.    The Debtors May Fail to Satisfy the Vote Requirements. ........................................... 18

    4.    The Debtors May Not Be Able to Secure Confirmation of the Plan. ........................... 18

    5.    The Debtors May Not Be Able to Secure Nonconsensual Confirmation Over Certain
Impaired Non-Accepting Classes. .................................................................................. 18

    6.    The Conditions Precedent to the Effective Date of the Plan May Not Occur. .............. 19

    7.    The Debtors' Ability to Confirm and Consummate the Plan Depends on the Continued
Support of Catalina Finance LLP. .................................................................................. 19

    8.    The Chapter 11 Cases May Be Converted to Cases Under Chapter 7 of the Bankruptcy
Code. ............................................................................................................................. 19

    9.    Releases, Injunctions, and Exculpation Provisions May Not Be Approved.................. 19

    B.    Risks Related to Recoveries Under the Plan.................................................. 19

    1.    No Guarantee of Timing or Form of Recovery for Holders of Class 3 Claims............. 20

    2.    No Guarantee of Timing of Recovery for Holders of Class 4 Claims.......................... 20

    3.    Certain Tax Implications of the Debtors' Bankruptcy................................................. 20

    C.    Risks Related to the Debtors' Businesses..................................................... 20

    1.    The Debtors Will Be Subject to the Risks and Uncertainties Associated with the
Chapter 11 Cases............................................................................................................ 20

**2.** Operating in Bankruptcy for a Long Period of Time May Harm the Debtors' Businesses. ................................................................................................................ 20

**3.** The Debtors' Business Is Subject to Various Laws and Regulations That Can Adversely Affect the Cost, Manner, or Feasibility of Doing Business. .......................................... 21

**4.** The Debtors Could Face Liabilities That Can Adversely Affect the Cost, Manner, or Feasibility of Doing Business. ...................................................................................... 21

D. Disclosure Statement Disclaimer. ........................................................................................ 21

**1.** The Financial Information Contained in This Disclosure Statement Has Not Been Audited. ......................................................................................................................... 21

**2.** Information Contained in This Disclosure Statement Is For Soliciting Votes. ............. 21

**3.** This Disclosure Statement Was Not Reviewed or Approved by the SEC. .................... 21

**4.** This Disclosure Statement May Contain Forward Looking Statements. ....................... 22

**5.** No Legal or Tax Advice Is Provided to You by This Disclosure Statement. ................ 22

**6.** No Admissions Made. ................................................................................................... 22

**7.** Failure to Identify Potential Objections. ...................................................................... 22

**8.** No Waiver of Right to Object or Right to Recover Transfers and Assets. .................... 22

**9.** Information Was Provided by the Debtors and Was Relied Upon by the Debtors' Advisors. ....................................................................................................................... 23

**10.** Potential Exists for Inaccuracies, and the Debtors Have No Duty to Update. .............. 23

**11.** No Representations Outside This Disclosure Statement are Authorized. ...................... 23

ARTICLE VI. CERTAIN U.S. FEDERAL INCOME TAX CONSIDERATIONS .................... 23

A. Certain U.S. Federal Income Tax Consequences of the Plan to U.S. Holders of Allowed TruPS Claims ...................................................................................................................... 25

**1.** In General. ..................................................................................................................... 25

**2.** Accrued Interest ............................................................................................................ 25

**3.** Market Discount. ........................................................................................................... 26

**4.** Bad Debt Deduction. ..................................................................................................... 26

B. Certain U.S. Federal Income Tax Consequences of the Plan to Non-U.S. Holders of Allowed TruPS Claims ......................................................................................................... 26

C. FATCA ................................................................................................................................. 26

D. Information Reporting and Back-Up Withholding. ............................................................... 27

ARTICLE VIII. RECOMMENDATION AND CONCLUSION ............................................... 27

## EXHIBITS

Exhibit A  Joint Chapter 11 Plan of Reorganization for Alea Holdings US Company and Its Debtor Affiliates

Exhibit B  First Day Declaration

Exhibit C  Corporate Organization Chart

Exhibit D  Liquidation Analysis

Exhibit E  Financial Projections

**ARTICLE I.**
**OVERVIEW OF THE PLAN**

### A. Introduction.

The following is a brief overview of certain material provisions of the Plan. This overview is qualified by reference to the provisions of the Plan, which is attached hereto as **Exhibit A**, and the exhibits thereto, as amended from time to time. In the event that any inconsistency or conflict exists between this Disclosure Statement and the Plan, the terms of the Plan will control.

A detailed summary of the Debtors' corporate and capital structure and history, including the events leading to the commencement of these chapter 11 cases and the goals of these cases, may be found in the *Declaration of Peter Kravitz in Support of The Debtors' Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration"), attached here as **Exhibit B**.

At the Confirmation Hearing, the Bankruptcy Court will confirm the Plan only if all of the applicable requirements of section 1129 of the Bankruptcy Code are met. Among the requirements for confirmation of a chapter 11 plan are that the plan: (1) is accepted by the requisite holders of claims or interests in impaired classes under the plan; (2) is in the "best interests" of each holder of a claim or interest in each impaired class under the plan; (3) is feasible; and (4) complies with the applicable provisions of the Bankruptcy Code. In this instance, only Holders of Claims in Classes 3 and 4 are entitled to vote to accept or reject the Plan. Because Classes 1, 2, 5, 6, 7, and 8 will be unimpaired or receive no distributions under the Plan, those Classes are deemed to accept or reject the Plan, as applicable. *See* Article III hereof for a discussion of the Bankruptcy Code's requirements for Plan Confirmation.

Confirmation and Consummation of the Plan are subject to certain conditions precedent, which are summarized in Article VIII of the Plan. There is no assurance that these conditions precedent will be satisfied or waived.

### B. The Plan.

The Debtors filed for chapter 11 bankruptcy protection on July 19, 2026. The Debtors intend to effectuate the restructuring transactions as more fully set forth in the Plan (the "Restructuring Transactions"), whereby:

- the TruPS Claims will be allowed in the aggregate amount of $120 million plus accrued interest and fees payable and discharged in exchange for a cash pool of $20 million;

- the Prepetition Facility Lender will not receive a distribution on account of any TruPS Claims it may hold, and its pro rata share of such distribution will be reallocated *pro rata* to all other holders of TruPS Claims;

- the Debtors' obligations under the Prepetition Facility will be restructured or will be discharged in exchange for a distribution of cash from a cash pool and/or a note, or in connection with a contribution of the Prepetition Facility to the capital of AHUSCO for no additional consideration;

1

- all Holders of Claims and Interests will provide releases with respect to any matters related to the Debtors; and

- the Debtors will otherwise emerge as Reorganized Debtors as set forth in the Plan.

Although the Debtors believe the Restructuring Transactions as provided by the Plan constitute the best available outcome for all stakeholders, the Debtors are open to any alternative transactions, including the sale of all or substantially all of the Debtors' assets under section 363 of the Bankruptcy Code. In the event that the Debtors do not receive the requisite votes to confirm the Plan or otherwise fail to meet the requirements for confirmation under section 1129 of the Bankruptcy Code, the Debtors intend to sell all or substantially all of their assets under section 363 of the Bankruptcy Code, and distribute to proceeds of sales in accordance with the Bankruptcy Code. Alternatively, the cases may be converted to cases under chapter 7 of the Bankruptcy Code. Additional information on the risk factors related to confirmation of the Plan can be found in Article V.B hereof.

### C. The Adequacy of This Disclosure Statement.

Before soliciting acceptances of a proposed chapter 11 plan, section 1125 of the Bankruptcy Code requires a plan proponent to prepare a written disclosure statement containing information of a kind, and in sufficient detail, to enable a hypothetical reasonable investor to make an informed judgment regarding acceptance of the plan. The Debtors are providing this Disclosure Statement in accordance with those requirements. This Disclosure Statement includes, without limitation, information about:

- the Plan, including a summary, the procedures for voting on the Plan and projected recoveries thereunder (Article II hereof);

- the classification and treatment of Claims or Interests under the Plan, including identification of the Holders of Claims entitled to vote on the Plan (Article II hereof);

- the statutory requirements for confirming the Plan (Article III hereof);

- a summary of relevant Plan provisions (Article IV hereof);

- certain risk factors that holders of Claims should consider before voting to accept or reject the Plan (Article V hereof); and

- certain United States federal income tax consequences of the Plan (Article VI hereof).

### D. Summary of Classes and Treatment of Claims or Interests.

The Plan designates the Classes of Claims against and Interests in the Debtors and specifies which Classes are: (1) Impaired or Unimpaired by the Plan; (2) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code; or (3) deemed to accept or reject the Plan. Claims against the Debtors and Interests in the Debtors are classified in eight (8) separate Classes, as described herein.

2

The classification of Claims or Interests, including  the estimated aggregate amount of Claims in each Class and the amount and nature of distributions to Holders of Claims or Interests in each Class are summarized in the table below.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims (including Postpetition Facility Claims), Professional Fee Claims, and Priority Tax Claims have not been classified.  Pursuant to Article II.B of the Plan, the Postpetition Facility Claims shall be Allowed in the aggregate amount of up to $35 million, plus applicable interest, fees, and expenses, as superpriority administrative claims pursuant to section 364(c)(1) of the Bankruptcy Code and, except to the extent that the Postpetition Facility Lender agrees to different treatment, shall be paid in full in Cash, or shall receive the same treatment provided to the Holders of Allowed Prepetition Facility Claims.  For a discussion of certain additional matters related to Administrative Claims, Professional Fee Claims, and Priority Tax Claims, see Article II of the Plan.

Each amount designated in the table below as "Estimated Percentage Recovery" for each Class is the quotient of the estimated Cash or other assets to be distributed to Holders of Allowed Claims in that Class, divided by the estimated aggregate amount of Allowed Claims in that Class. Each of the estimated Cash or other assets, and the estimated aggregate amount of Allowed Claims, have been made in ranges with both low and high estimates.  In determining those amounts, the Debtors have assumed that the Plan is consummated as described herein.

For a discussion of various factors that could materially affect the amount of assets to be distributed pursuant to the Plan, see Article V of this Disclosure Statement.

| SUMMARY OF ESTIMATED RECOVERIES | | | | |
|---|---|---|---|---|
| Class | Claim/Interest | Treatment of Claim/Interest | Projected Allowed Amount of Claims[3] | Estimated % Recovery Under Plan |
| Class 1 | Other Secured Claims | Unimpaired Not Entitled to Vote (Deemed to Accept) | $0 | 100% |
| Class 2 | Other Priority Claims | Unimpaired Not Entitled to Vote (Deemed to Accept) | $0 | 100% |
| Class 3 | Prepetition Facility Claims | Impaired Entitled to Vote | $160,000,000 plus interest, fees, and other expenses | 12.5%[4] |

---

[3]   The projected allowed amounts and estimated recovery for Prepetition Facility Claims and TruPS Claims are only based on principal amounts and do not include accrued interest, fees payable, or other amounts outstanding to the Holders of such claims.

[4]   The ultimate recovery on Prepetition Facility Claims is highly variable depending on amount and type of consideration; the recovery estimated for disclosure statement purposes only is based on $20 million cash distribution.

| Class 4 | TruPS Claims | Impaired Entitled to Vote | $120,000,000 plus interest and other expenses | 18.2%[5] |
| Class 5 | General Unsecured Claims | Unimpaired Not Entitled to Vote (Deemed to Accept) | $0 | 100% |
| Class 6 | Section 510(b) Claims | Impaired Not Entitled to Vote (Deemed to Reject) | $0 | 0% |
| Class 7 | Intercompany Claims | Unimpaired/Impaired Not Entitled to Vote (Deemed to Accept or Reject) | N/A | 100% |
| Class 8 | Intercompany Interests | Unimpaired/Impaired Not Entitled to Vote (Deemed to Accept or Reject) | N/A | 0% |

### E. Key Dates in the Chapter 11 Cases

The following are the key dates applicable to these Chapter 11 Cases and Confirmation of the Plan, which are subject to adjournment in accordance with the procedures of the Bankruptcy Court.

| Date and Time (all in prevailing Central Time) | Event or Deadline |
|---|---|
| July 19, 2026 | Voting Record Date |
| July 20, 2026 | Disclosure Statement Hearing |
| August 27, 2026 | Debtors' Deadline to File Plan Supplement |
| September 2, 2026, at 4:00 p.m. CT | Voting Deadline |
| September 2, 2026, at 4:00 p.m. CT | Third-Party Release Deadline |

---

[5]   The estimated recovery for TruPS Claims reflects the waiver by the Prepetition Facility Lender of its *pro rata* distribution on account of its TruPS Claims (in the aggregate principal amount of $10 million) and the reallocation of such distribution *pro rata* to all other holders of TruPS Claims.

4

| September 2, 2026, at 4:00 p.m. CT | Plan Objection Deadline |
|---|---|
| September 10, 2026, at [●] [a.m./p.m.] CT | Confirmation Hearing |

### ARTICLE II.
### QUESTIONS AND ANSWERS REGARDING THIS
### DISCLOSURE STATEMENT AND THE PLAN

**A. What is chapter 11?**

Chapter 11 is the principal business restructuring chapter of the Bankruptcy Code. In addition to permitting debtor rehabilitation, chapter 11 promotes equality of treatment for creditors and similarly situated equity interest holders, subject to the priority of distributions prescribed by the Bankruptcy Code.

The commencement of a chapter 11 case creates an estate that comprises all of the legal and equitable interests of the debtor as of the date the chapter 11 case is commenced. The Bankruptcy Code provides that a debtor may continue to operate its business and remain in possession of its property as a "debtor in possession."

Consummating a chapter 11 plan is the principal objective of a chapter 11 case. A bankruptcy court's confirmation of a plan binds the debtor, any person acquiring property under the plan, any creditor or equity interest holder of the debtor, and any other entity as may be ordered by the bankruptcy court. Subject to certain limited exceptions, the order issued by a bankruptcy court confirming a plan provides for the treatment of the debtor's liabilities in accordance with the terms of the confirmed plan.

**B. Why are the Debtors sending me this Disclosure Statement?**

The Debtors are seeking to obtain Bankruptcy Court approval of the Plan. Before soliciting acceptances of the Plan, section 1125 of the Bankruptcy Code requires the Debtors to prepare a disclosure statement containing adequate information of a kind, and in sufficient detail, to enable a hypothetical reasonable investor to make an informed judgment regarding acceptance of the Plan and to share such disclosure statement with all holders of claims whose votes on the Plan are being solicited. This Disclosure Statement is being submitted in accordance with these requirements.

**C. Am I entitled to vote on the Plan?**

Your ability to vote on, and your distribution under, the Plan, if any, depends on what type of Claim or Interest you hold and whether you held that Claim or Interest as of the Voting Record Date (as defined herein). Each category of holders of Claims and Interests, pursuant to sections 1122(a) and 1123(a)(1) of the Bankruptcy Code, is referred to as a "Class." Each Class's respective voting status is set forth in Article III of the Plan and Article II of this Disclosure Statement.

Except as otherwise provided in the Plan, nothing in the Plan shall affect the Debtors' or the Reorganized Debtors' rights regarding any Unimpaired Claims, including all rights regarding legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

**D.  What will I receive from the Debtors if the Plan is consummated?**

A summary of the anticipated recovery to holders of Claims or Interests under the Plan is set forth in Article II of this Disclosure Statement.  Any estimates of Claims or Interests in this Disclosure Statement may vary from the final amounts allowed by the Bankruptcy Court.  Your ability to receive distributions under the Plan depends upon the ability of the Debtors to obtain Confirmation and meet the conditions necessary to consummate the Plan.

THE PROJECTED RECOVERIES SET FORTH IN THIS ARTICLE II ARE ESTIMATES ONLY AND THEREFORE ARE SUBJECT TO CHANGE.  FOR A COMPLETE DESCRIPTION OF THE DEBTORS' CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS, REFERENCE SHOULD BE MADE TO THE ENTIRE PLAN.

**E.  What will I receive from the Debtors if I hold an Allowed Administrative Claim or a Priority Tax Claim?**

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III of the Plan.

A description of these Claims and their treatment is included in Article II of the Plan.

**F.  Are any regulatory approvals required to consummate the Plan?**

At this time, the Debtors are evaluating which, if any, regulatory approvals are required to consummate the Plan.  To the extent any such regulatory approvals or other authorizations, consents, rulings, or documents are necessary to implement and effectuate the Plan, however, it is a condition precedent to the Effective Date that they be obtained.

**G.  What happens to my recovery if the Plan is not confirmed or does not go effective?**

In the event that the Plan is not confirmed or does not go effective, there is no assurance as to what precisely will happen.  It is possible that any alternative may provide holders of Claims with less than they would have received pursuant to the Plan.  For a more detailed description of potential consequences of extended Chapter 11 Cases, or of a liquidation scenario under chapter 7 of the Bankruptcy Code, see Article V of this Disclosure Statement, and the Liquidation Analysis, attached hereto as **Exhibit D**.

**H.  If the Plan provides that I get a distribution, do I get it upon Confirmation or when the Plan goes effective, and what is meant by "Confirmation," "Effective Date," and "Consummation"?**

"Confirmation" of the Plan refers to approval of the Plan by the Bankruptcy Court. Confirmation of the Plan does not guarantee that you will receive the distribution indicated under

the Plan.  After Confirmation of the Plan by the Bankruptcy Court, there are conditions that need to be satisfied or waived so that the Plan can go effective.  Initial distributions to holders of Allowed Claims will only be made on the date the Plan becomes effective—the "Effective Date"— or as soon as reasonably practicable thereafter, as specified in the Plan.  "Consummation" of the Plan refers to the occurrence of the Effective Date.  See Article VIII of the Plan, entitled "Conditions Precedent to the Effective Date," for a discussion of conditions precedent to Consummation.

**I.   What are the sources of Cash and other consideration required to fund the Plan?**

Subject to the provisions of the Plan concerning the Professional Fee Reserve (as defined in the Plan), distributions under the Plan shall be funded by the (1) Debtors' Cash on hand and (2) proceeds from the sale of the Debtors' assets, including the sale of the Debtors' subsidiaries, Alea North America Insurance Company, and North American Insurance Company of California, if any.

**J.   Is there potential litigation related to the Plan?**

Parties in interest may object to the approval of this Disclosure Statement and may object to Confirmation of the Plan, which objections potentially could give rise to litigation.

In the event that it becomes necessary to confirm the Plan over the objection of certain Classes, the Debtors may seek confirmation of the Plan notwithstanding the dissent of such rejecting Classes.  The Bankruptcy Court may confirm the Plan pursuant to the "cramdown" provisions of the Bankruptcy Code, which allows the Bankruptcy Court to confirm a plan that has been rejected by an impaired Class if it determines that the Plan satisfies section 1129(b) of the Bankruptcy Code.

**K.  Does the Plan preserve Causes of Action?**

The Plan provides for the retention of certain Retained Causes of Action and Causes of Action of the Debtors that are not otherwise transferred or sold, other than those that are expressly waived, relinquished, exculpated, released, compromised, or settled, as described in greater detail in Article IV of the Plan.

**L.  Will there be releases, exculpation, and injunction granted to parties in interest as part of the Plan?**

Yes, the Plan proposes to release the Released Parties and to exculpate the Exculpated Parties.

The Released Parties include each of, and in each case in its capacity as such:

(a) the Debtors and each of the Debtors' Estates;

(b) each Debtor after the Effective Date, as a Reorganized Debtor;

(c) the Committee and each of its members solely in their capacities as members of the Committee (if applicable);

(d) the Consenting Capital Securities Holders;

(e) each of the Delaware Trustee, the Guarantee Trustee, the Indenture Trustee, and the Institutional Trustee, each in its capacity as such;

(f) Catalina Finance LLP in its capacity as Prepetition Facility Secured Parties, Postpetition Facility Secured Parties, and Plan Sponsor;

(g) any other Releasing Party; and

(h) each Related Party of each Entity in clauses (a) through this clause (h); *provided*, that in each case an Entity shall not be a Released Party if it (i) elects to opt out of the Third-Party Release as provided on its respective Release Opt-Out Form or (ii) timely objects to the Third-Party Release through a formal objection Filed on the docket of the Chapter 11 Cases that is not resolved before the Confirmation Order is entered.

The Exculpated Parties include:

(a) the Debtors;

(b) each independent director of the Debtors, for conduct within the scope of their duties;

(c) the Committee; and

(d) the members of the Committee in their official capacities, for conduct within the scope of their duties.

The Debtors will also seek findings of fact and conclusions of law with regards to officers' and directors' performance of their duties as officers and directors of the Debtors. The Debtors' releases, third-party releases, exculpation, and injunction provisions included in the Plan are an integral part of the Debtors' overall restructuring efforts.

The Released Parties and the Exculpated Parties have made substantial and valuable contributions to the Debtors' restructuring through, among other things, contribution of value and efforts to negotiate and implement the Plan, which will maximize value of the Debtors for the benefit of all parties in interest. Accordingly, each of the Released Parties and the Exculpated Parties warrant the benefit of the release and exculpation provisions.

**Furthermore, the following parties are included in the definition of "Releasing Parties," in each case in its capacity as such, and will be deemed to have expressly, unconditionally, individually, and collectively released and discharged all claims and causes of action against the Released Parties:**

(a) each Debtor;

8

(b) each Debtor after the Effective Date, as a Reorganized Debtor;

(c) the Committee and each of its members solely in their capacities as members of the Committee (if applicable);

(d) the Consenting Capital Securities Holders;

(e) each of the Delaware Trustee, the Guarantee Trustee, the Indenture Trustee, and the Institutional Trustee;

(f) Catalina Finance LLP in its capacity as the Prepetition Facility Secured Parties, Postpetition Secured Parties, and Plan Sponsor;

(g) all Holders of Claims or Interests whether voting to accept or reject the Plan, solicited but not voting, or Unimpaired and deemed to accept the Plan (subject to the proviso at the end of this definition);

(h) each Holder of a Claim in Class 6 that affirmatively opts in to the Third-Party Release as provided on its respective Release Opt-In Form; and

(i) each Related Party of each Entity in clause (a) through this clause (i) for which such Entity is legally entitled to bind such Related Party to the Third-Party Release under applicable non-bankruptcy law; *provided, that* in each case, an Entity shall not be a Releasing Party if it (x) elects to opt out of the Third-Party Release as provided on its respective Release Opt-Out Form, or (y) timely objects to the Third-Party Release through a formal objection Filed on the docket of the Chapter 11 Cases that is not resolved before the Confirmation Order is entered.

The Debtors believe that the release, exculpation, and injunction provisions in the Plan are necessary and appropriate and meet the requisite legal standard promulgated by the United States Court of Appeals for the Fifth Circuit.  Moreover, the Debtors will present evidence at the Confirmation Hearing to demonstrate the basis for and propriety of the release and exculpation provisions.  The release, exculpation, and injunction provisions are contained in Article IX of the Plan.

**M. When is the deadline to vote on the Plan?**

The Voting Deadline is September 2, 2026, at 4:00 p.m. (prevailing Central Time).

**N.  How do I vote on the Plan?**

Detailed instructions regarding how to vote on the Plan are contained on the ballot distributed to holders of Claims that are entitled to vote on the Plan (the "Ballot").  For your vote to be counted, the Ballot containing your vote must be properly completed, executed, and delivered as directed so that it is **actually received** by the Debtors' Claims and Balloting Agent, Omni Agent Solutions, Inc., **on or before the Voting Deadline of September 2, 2026, at 4:00 p.m (prevailing Central Time)**.

**O.  Why is the Bankruptcy Court holding a Confirmation Hearing?**

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court to hold a hearing on Confirmation of the Plan and recognizes that any party in interest may object to Confirmation of the Plan. The Confirmation Hearing may be adjourned from time to time without further notice.

**P. What is the effect of the Confirmation Hearing?**

The confirmation of a plan by a bankruptcy court binds the debtor, any person acquiring property under a plan, any creditor or equity interest holder of a debtor, and any other person or entity as may be ordered by the bankruptcy court in accordance with the applicable provisions of the Bankruptcy Code.

**Q. When is the Confirmation Hearing?**

The Confirmation Hearing is currently scheduled for September 10, 2026, at [●] CT.

**R. Who do I contact if I have additional questions with respect to this Disclosure Statement or the Plan?**

If you have any questions regarding this Disclosure Statement or the Plan, please contact the Debtors' Claims and Balloting Agent via one of the following methods:

*By regular mail, hand delivery, or overnight mail at:*
AHUSCO, et al., Ballot Processing
c/o Omni Agent Solutions, Inc.
5955 De Soto Ave., Suite 100
Woodland Hills, CA 91367

*By electronic mail at:*
AHUSCOInquiries@OmniAgnt.com

*By telephone (toll free) at:*
(866) 662-2295

*By telephone (international) at:*
(818) 510-4623

Copies of the Plan, this Disclosure Statement, and any other publicly filed documents in the Chapter 11 Cases are available upon written request to the Claims and Balloting Agent at the address above or by downloading the documents from the Debtors' restructuring website at https://omniagentsolutions.com/AHUSCO (free of charge) or via PACER at https://www.pacer.gov (for a fee) upon filing.

**S. Do the Debtors recommend voting in favor of the Plan?**

Yes. The Debtors believe that the Plan provides for a larger distribution to the Debtors' stakeholders than would otherwise result from any other available alternative. The Debtors believe that the Plan is in the best interest of the Debtors' stakeholders, and that any alternatives (to the extent they exist) fail to realize or recognize the value inherent under the Plan.

### T.  Who supports the Plan?

The Plan is supported by the Debtors; Catalina Finance LLP as Plan Sponsor, Prepetition Facility Lender, and Postpetition Facility Lender; and certain holders of or investment managers constituting a majority of the Capital Securities, each of which is party to that certain *Restructuring Support Agreement*, executed on June 8, 2026.

---

**RECOMMENDATION BY THE DEBTORS**

It is the Debtors' opinion that confirmation and implementation of the Plan is in the best interests of the Debtors' Estates and their creditors.  Therefore, the Debtors recommend that all creditors whose votes are being solicited submit a ballot to **accept** the Plan.

---

## ARTICLE III.
## SOLICITATION PROCEDURES AND PLAN CONFIRMATION REQUIREMENTS

Concurrently with the filing of the Chapter 11 Cases, the Debtors sought entry of an order from the Bankruptcy Court to, among other things, (1) conditionally approve this Disclosure Statement pursuant to section 1125 of the Bankruptcy Code and (2) establish Plan voting and procedures.  This Section of the Disclosure Statement provides an overview of the Solicitation Procedures, which are qualified in their entirety by the order of the Bankruptcy Court, entered at Docket No. [__].

### A.  Solicitation Package.

The package of materials to be sent to Holders of Claims entitled to vote to accept or reject the Plan (the "Solicitation Package") will contain:

- the Disclosure Statement (including the Plan and all other exhibits hereto);

- the notice of Confirmation Hearing

- an appropriate form of Ballot, together with detailed voting instructions; and

- any additional documents that the Bankruptcy Court has ordered to be made available.

The Solicitation Package may also be obtained free of charge from Omni Agent Solutions, Inc., the Debtors' Bankruptcy Court-appointed claims and balloting agent by: (1) visiting https://omniagentsolutions.com/AHUSCO; (2) emailing the Claims and Balloting Agent at AHUSCOInquiries@OmniAgnt.com; or (3) calling (866) 662-2295.

### B.  Non-Voting Status Package

The package of materials to be sent to Holders of Claims or Interests not entitled to vote to accept or reject the Plan will contain:

11

- the notice of Confirmation Hearing

- as applicable, either (i) for Holders of Claims and Interests in Class 1, Class 2, Class 5, Class 7, and Class 8, the Release Opt-Out Form, or (ii) for Holders of Claims in Class 6, the Release Opt-In Form, together with detailed instructions for completion and a pre-addressed, postage pre-paid return envelope; and

- any additional documentation that the Bankruptcy Court has ordered to be made available.

### C. Voting Procedures and Requirements.

Pursuant to the Bankruptcy Code, only Classes of Claims against or Interests in a debtor that are "impaired" under the terms of a chapter 11 plan are entitled to vote to accept or reject a plan. A class is "impaired" if the legal, equitable or contractual rights attaching to the claims or interests of that class are modified, other than by curing defaults and reinstating maturity. Classes of Claims or Interests that are not impaired are not entitled to vote on the Plan and are conclusively presumed to have accepted the Plan. In addition, Classes of Claims or Interests that do not receive distributions under the Plan are not entitled to vote on the Plan and are deemed to have rejected the Plan. The classification of Claims or Interests is summarized, together with an indication of whether each Class of Claims or Interests is Impaired or Unimpaired, in Article II herein. July 19, 2026, shall serve as the Voting Record Date for the purpose of determining which Holders of Filed or scheduled Claims in Classes 3 and 4 are entitled to receive a Solicitation Package.

Voting on the Plan by each Holder of a Claim in Classes 3 and 4 is important. Please carefully follow all of the instructions contained on the Ballot(s) provided to you. All Ballots must be completed and returned in accordance with the instructions provided. To be counted, your ballot or ballots must be received by 4:00 p.m. prevailing Central Time, on September 2, 2026, at the address set forth on the pre-addressed envelope provided to you. For Holders of TruPS Claims in Class 4 whose claims are held in "street name" by brokers, banks, commercial banks, trust companies, dealers, or other agents or nominees (collectively, the "Nominees") at the Depository Trust Company on behalf of underlying beneficial holders, all Ballots must be completed, executed, and returned so as to be actually received by the Nominees to permit the Nominee sufficient time to deliver your votes to the Claims and Balloting Agent by the Voting Deadline.

If you are entitled to vote and you did not receive a Ballot, received a damaged Ballot or lost your Ballot, please call or email the Debtors' Claims and Balloting Agent, at (866) 662-2295 (toll free), (818) 510-4623 (international) or AHUSCOInquiries@OmniAgnt.com. Also, this Disclosure Statement, the Plan and all of the related exhibits and schedules are available, without charge, to any party in interest at https://omniagentsolutions.com/AHUSCO.

Ballots cannot be transmitted orally, by email, or by facsimile. Accordingly, you are urged to return your signed and completed Ballot, by hand delivery, overnight service, regular U.S. mail, or electronically via the Claims and Balloting Agent's e-Ballot portal promptly, so that it is received by the Claims and Balloting Agent before the Voting Deadline.

### D. Plan Objection Deadline.

The deadline to file objections to the Confirmation of the Plan (the "Confirmation Objections") is September 2, 2026, at 4:00 p.m. (prevailing Central Time) (the "Objection Deadline"). All Confirmation Objections must be in writing and must specify in detail the name and address of the objector, all grounds for the objection, and the amount of the Claim or Interest held by the objector. Any Confirmation Objection must be filed with the Bankruptcy Court and served on the Debtors, the Committee, and the U.S. Trustee on or before the Objection Deadline.

### E. Confirmation Hearing.

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a hearing on confirmation of the Plan. The Bankruptcy Court has set September 10, 2026 at [_] CT as the date and time for the Confirmation Hearing.

The Confirmation Hearing may, however, be continued or adjourned from time to time without further notice to parties in interest other than an adjournment announced in open court or a notice of adjournment Filed with the Bankruptcy Court and served in accordance with the Bankruptcy Rules. Subject to section 1127 of the Bankruptcy Code, the Plan may be modified, subject to the applicable consent rights set forth in the Restructuring Support Agreement, if necessary, prior to, during, or as a result of the Confirmation Hearing without further notice to parties in interest.

### F. Confirmation.

To confirm the Plan, the Bankruptcy Code requires that the Bankruptcy Court make a series of findings concerning the Plan and the Debtors, including that:[6]

- the Plan has classified Claims and Interests in a permissible manner;

- the Plan complies with the applicable provisions of the Bankruptcy Code;

- the Debtors have complied with the applicable provisions of the Bankruptcy Code;

- the Debtors, as proponents of the Plan, have proposed the Plan in good faith and not by any means forbidden by law;

- the disclosure required by section 1125 of the Bankruptcy Code has been made;

- the Plan has been accepted by the requisite votes, except to the extent that cramdown is available under section 1129(b) of the Bankruptcy Code, of creditors and equity interest holders;

- the Plan is feasible;

---

[6] The descriptions contained herein are only a summary of certain confirmation requirements; they are not exhaustive of all confirmation requirements and should not be construed as such.

13

- all U.S. Trustee Statutory Fees due and owing have been paid or the Plan provides for the payment thereof on the Effective Date; and

- the Plan is in the "best interests" of all Holders of Claims or Interests in an Impaired Class by providing to those Holders on account of their Claims or Interests property of a value, as of the Effective Date, that is not less than the amount that each Holder would receive or retain in a chapter 7 liquidation, unless each Holder of a Claim or Interest in that Class has accepted the Plan.

### G.  Acceptance.

A Plan is accepted by an Impaired Class of Claims if Holders of at least two-thirds in dollar amount and a majority in number of Claims of that Class vote to accept the Plan.  Only those Holders of claims who actually vote (and are entitled to vote) to accept or to reject a plan count in this tabulation.

### H.  Feasibility.

Section 1129(a)(11) of the Bankruptcy Code requires that confirmation of a plan not be likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor (unless liquidation or reorganization is proposed in the Plan). The Debtors believe that the Plan meets the feasibility requirement, as confirmation is not likely to be followed by liquidation or the need for further financial reorganization of the Reorganized Debtors or Post-Effective Debtors, as applicable, or any successor under the Plan. See **Exhibit E** hereof for further discussion.

### I.   Best Interests Test; Liquidation Analysis.

Notwithstanding acceptance of the Plan by each Impaired Class, to confirm the Plan, the Bankruptcy Court must determine that the Plan is in the best interests of each Holder of a Claim or Interest in any Impaired Class who has not voted to accept the Plan.  Accordingly, if an Impaired Class does not unanimously accept the Plan, the "best interests" test requires that the Bankruptcy Court find that the Plan provides to each member of that Impaired Class a recovery on account of the Holder's Claim or Interest that has a value, as of the Effective Date, at least equal to the value of the distribution that the Holder would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on the Effective Date.

To address the best interests test, the Debtors have prepared the Liquidation Analysis, attached hereto as **Exhibit D**.  The Debtors demonstrate in the Liquidation Analysis that the Plan will provide a greater ultimate return to Holders of Allowed Claims than would a chapter 7 liquidation of the Debtors.

The Liquidation Analysis should be read in conjunction with the assumptions, qualifications, and explanations set forth in the Disclosure Statement, the Plan, and the Plan Supplement, in their entirety.

### J.  Compliance with Applicable Provisions of the Bankruptcy Code.

14

Section 1129(a)(1) of the Bankruptcy Code requires that the Plan comply with the applicable provisions of the Bankruptcy Code.  The Debtors considered each of these issues in the development of the Plan and have determined that the Plan complies with all provisions of the Bankruptcy Code.

### K.  Alternatives to Confirmation and Consummation of the Plan.

In the event that the Debtors do not receive the requisite votes to confirm the Plan or otherwise fail to meet the requirements for confirmation under section 1129 of the Bankruptcy Code, the Debtors intend to sell all or substantially all of the Debtors' assets under section 363 of the Bankruptcy Code, subject to the applicable rights and remedies of any parties in interest, and distribute the proceeds of the sales in accordance with the Bankruptcy Code.

Alternatively, the Chapter 11 Cases may be converted to chapter 7 cases.  In liquidation cases under chapter 7 of the Bankruptcy Code, a trustee would be appointed to liquidate the remaining assets of the Debtors and distribute proceeds to creditors.  The proceeds of the liquidation would be distributed to the respective creditors of the Debtors in accordance with the priorities established by the Bankruptcy Code.  For further discussion of the potential impact on the Debtors of the conversion of the Chapter 11 Cases to chapter 7 liquidation, see Article V.A.7 of this Disclosure Statement.

### L.  Releases by the Debtors and Third Parties Set Forth in the Plan.

Article IX of the Plan provides that each Released Party is deemed released by the Debtors and their Estates from any and all claims and Causes of Action except as set forth therein.  Article IX of the Plan also provides that each Released Party is deemed released by each Releasing Party from any and all claims and Causes of Action except as set forth therein.  The Debtors have determined that applicable law and the facts support those releases and that the Bankruptcy Court can and should approve them.

## ARTICLE IV.
## CHART OF RELEVANT PLAN PROVISIONS

The chart below provides a summary of various topics covered by the Plan and the relevant page number.

| Article | Topics |
| --- | --- |
| ARTICLE II. ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS, AND STATUTORY FEES | Provides for the treatment of unclassified Claims, including Administrative Claims, Postpetition Facility Claims (Allowed as superpriority administrative expense claims and paid in full in Cash or afforded the same treatment as Allowed Prepetition Facility Claims), Professional Fee Claims, Indenture Trustee Fees, Priority Tax Claims, and U.S. Trustee statutory fees. |
| ARTICLE III. CLASSIFICATION AND TREATMENT OF | Classifies Claims and Interests into Classes 1 through 8 and specifies the treatment, impairment, and voting status of each Class, including the Prepetition Facility Claims (Class 3), TruPS Claims (Class 4), and General Unsecured Claims (Class 5). Also |

| | |
|---|---|
| **CLAIMS AND INTERESTS** | addresses acceptance and confirmation pursuant to sections 1129(a)(10) and 1129(b) of the Bankruptcy Code, subordination, and postpetition interest on Claims. |
| **ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN** | Sets forth how the Plan will be implemented, including the general settlement embodied in the Plan; the sources of Cash and other consideration for distributions (the Prepetition Facility Cash Pool (if applicable), the $20 million TruPS Cash Pool, the proceeds of the ANAIC and NAICC sales (if applicable), and the Postpetition Facility); the Restructuring Transactions; the continued corporate existence and vesting of assets in the Reorganized Debtors; the cancellation of existing securities and Liens; the termination of the Trusts with respect to the Capital Securities; the preservation of Retained Causes of Action; the interaction between the Sale Orders and the Plan; and the closing of the Chapter 11 Cases. |
| **ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** | Governs the assumption and rejection of Executory Contracts and Unexpired Leases, the treatment of any resulting rejection-damages Claims, the treatment of the Debtors' Insurance Policies, and contracts and leases entered into after the Petition Date. |
| **ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS** | Establishes the mechanics for distributions under the Plan, including the role of the Disbursing Agent, the Record Date and timing of distributions, and the treatment of undeliverable or unclaimed distributions, setoffs, and recoupment.<br><br>In particular, Article VI sets forth how the TruPS Claims are treated. The Trust Agreements provide that the Trusts will automatically terminate upon the bankruptcy of AHUSCO, and upon such termination the Indenture Trustee is required to distribute the Debentures to the Holders of the Capital Securities. Accordingly, for purposes of the Plan, Holders of the Capital Securities are deemed to hold the Debentures (and thus the TruPS Claims), while Holders of the Common Securities receive no distribution under the Plan. Distributions on account of Allowed TruPS Claims are made to (or at the direction of) the Indenture Trustee, which acts as (or directs) the Disbursing Agent, in accordance with the Plan and the Indentures and subject to the Indenture Trustee Charging Lien. Upon the final distribution on account of the Debentures, the Debentures are deemed null, void, and worthless and the Trusts are cancelled and dissolved; and to the extent any Class 4 Holder does not accept its distribution, such distribution is returned to the Debtors. |
| **ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT,** | Sets forth the claims-resolution procedures, including the allowance and estimation of Claims, the Debtors' authority to object to, adjust, or seek disallowance of Claims, the Disputed Claims process, and the timing of distributions on account of Disputed Claims that later become Allowed. |

16

| | |
|---|---|
| **UNLIQUIDATED, AND DISPUTED CLAIMS** | |
| **ARTICLE VIII. CONDITIONS PRECEDENT TO THE EFFECTIVE DATE** | Specifies the conditions precedent to Confirmation and to the occurrence of the Effective Date, and the Debtors' ability (and limitations thereon) to waive those conditions. |
| **ARTICLE IX. RELEASE, INJUNCTION, AND RELATED PROVISIONS** | Contains the operative provisions relating to the discharge of Claims and termination of Interests, the Debtor Release, the consensual Third-Party Release (subject to the opt-out / opt-in, as applicable), the Exculpation, and the Injunction, together with related protections.<br><br>**<u>All parties are advised to review Article IX carefully because their rights may be affected.</u>** |
| **ARTICLE X. RETENTION OF JURISDICTION** | Sets forth the matters over which the Bankruptcy Court will retain jurisdiction following the Effective Date. |
| **ARTICLE XI. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN** | Describes the Debtors' rights to modify, amend, revoke, or withdraw the Plan, and the effect of Confirmation on any modifications. |
| **ARTICLE XII. MISCELLANEOUS PROVISIONS** | Contains the Plan's miscellaneous provisions, including immediate binding effect, the Plan Supplement, payment of statutory fees, substantial consummation, reservation of rights, successors and assigns, governing law, and notices. |

## ARTICLE V.
## RISK FACTORS

Under the Plan, Holders of Claims in Class 3 will receive one or a combination of (i) Cash, (ii) a replacement note, (iii) conversion to equity in Reorganized AHUSCO or a contribution of some or all of its Claim into the capital of Reorganized AHUSCO (for no consideration), and (iv) Reinstatement; and Holders of Claims in Class 4 shall receive distributions funded by the Debtors with Cash.  In light of this, prior to voting on the Plan, Holders of Claims in Classes 3 and 4, as well as entities in non-voting Classes, should consider carefully the risk factors described below, as well as all of the information contained in this Disclosure Statement, including the Exhibits hereto.  These risk factors should not, however, be regarded as constituting the only risks involved in connection with the Plan and its implementation.  See Article VI of this Disclosure Statement for a discussion of U.S. federal income tax considerations relevant to Holders of Claims in Class 4.

**A.  Bankruptcy Law Considerations.**

17

1. <u>Parties in Interest May Object to the Plan's Classification of Claims and Interests</u>.

There is no guarantee that the Bankruptcy Court will agree with the classification of Claims and Interests as proposed by the Plan.  Section 1122 of the Bankruptcy Code provides that a chapter 11 plan may place a claim or an equity interest in a particular class only if that claim or interest is substantially similar to the other claims or interests in that class.  While the Debtors believe the classification of Claims and Interests set forth in the Plan complies with the Bankruptcy Code, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

2. <u>The Debtors May Object to the Amount or Classification of a Claim</u>.

Except as otherwise provided in the Plan, the Debtors reserve the right to object to the amount or classification of any Claim under the Plan.  The estimates set forth in this Disclosure Statement cannot be relied upon by any Holder of a Claim where such Claim is subject to an objection and such Holder of a Claim thus may not receive its expected share of the estimated distributions.

3. <u>The Debtors May Fail to Satisfy the Vote Requirements.</u>

If votes are received in number and amount sufficient to enable the Bankruptcy Court to confirm the Plan, the Debtors intend to seek, as promptly as practicable thereafter, confirmation of the Plan.  In the event that sufficient votes are not received, the Debtors may need to seek to confirm an alternative chapter 11 plan or transaction.  There can be no assurance that the terms of any such alternative chapter 11 plan or other transaction would be similar or as favorable to the holders of Interests and Allowed Claims as those proposed in the Plan, and the Debtors do not believe that any such transaction exists or is likely to exist that would be more beneficial to the Estates than the Plan.

4. <u>The Debtors May Not Be Able to Secure Confirmation of the Plan.</u>

There is no guarantee that the Plan will be confirmed.  If the Plan, or a substantially similar plan, is not confirmed, the treatment and timing of distributions will be uncertain, and a significant risk exists that the Chapter 11 Cases could be converted to chapter 7, which the Debtors believe would substantially diminish creditor recoveries.

5. <u>The Debtors May Not Be Able to Secure Nonconsensual Confirmation Over Certain Impaired Non-Accepting Classes.</u>

In the event that any impaired class of claims or interests does not accept a chapter 11 plan, a bankruptcy court may nevertheless confirm a plan at the proponents' request if at least one impaired class (as defined under section 1124 of the Bankruptcy Code) has accepted the plan (with such acceptance being determined without including the vote of any "insider" in such class), and, as to each impaired class that has not accepted the plan, the bankruptcy court determines that the plan "does not discriminate unfairly" and is "fair and equitable" with respect to the dissenting impaired class(es).  The Debtors may request such nonconsensual Confirmation in accordance with subsection 1129(b) of the Bankruptcy Code.  Pursuit of nonconsensual confirmation may increase professional fees and expenses.

18

6. **The Conditions Precedent to the Effective Date of the Plan May Not Occur.**

Confirmation and the Consummation of the Plan are subject to conditions precedent set forth in Article VIII of the Plan. If those conditions are not waived or satisfied, the Effective Date will not occur, and the Debtors may be required to seek confirmation of a new plan or pursue an alternative transaction, or their cases may be converted to chapter 7.

7. **The Debtors' Ability to Confirm and Consummate the Plan Depends on the Continued Support of Catalina Finance LLP.**

The Plan is premised on the support of Catalina Finance LLP in its capacities as Prepetition Facility Lender, Postpetition Facility Lender, and Plan Sponsor, and the Restructuring Support Agreement remaining in effect. The Restructuring Support Agreement contains certain covenants, milestones, and termination events. If the Restructuring Support Agreement is terminated, or if Catalina Finance LLP otherwise ceases to support the Plan, the Debtors may be unable to confirm or consummate the Plan, may lose access to postpetition financing, and may be required to pursue an alternative chapter 11 plan or convert these Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, either of which could materially delay these Chapter 11 Cases and reduce recoveries to Holders of Claims.

8. **The Chapter 11 Cases May Be Converted to Cases Under Chapter 7 of the Bankruptcy Code.**

If the Bankruptcy Court finds that it would be in the best interest of creditors and/or the debtor in a chapter 11 case, the Bankruptcy Court may convert a chapter 11 bankruptcy case to a case under chapter 7 of the Bankruptcy Code. In such event, a chapter 7 trustee would be appointed or elected to liquidate the debtor's assets for distribution in accordance with the priorities established by the Bankruptcy Code. The Debtors believe chapter 7 liquidation would result in significantly lower creditor recoveries due to reduced asset monetization, increased litigation costs, and the expenses of appointing a chapter 7 trustee. In addition, pursuant to the Interim and Final Orders approving the Postpetition Facility and use of Cash Collateral, the claims, liens, adequate protection obligations, and other protections granted to the Postpetition Facility Secured Parties shall survive any conversion of these Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code or any dismissal of these Chapter 11 Cases, and would remain senior in priority.

9. **Releases, Injunctions, and Exculpation Provisions May Not Be Approved.**

Certain parties may believe that they have valid objections to the release and exculpation provisions in the Plan. The Debtors believe that any such objection is without merit; however, in the event that such objection is sustained by the Bankruptcy Court and such release and/or exculpation provisions are modified or stricken from the Plan, consenting parties may withdraw their support for the Plan, which may result in the Debtors being unable to confirm the Plan or any other chapter 11 plan.

**B. Risks Related to Recoveries Under the Plan.**

**1.**        No Guarantee of Timing or Form of Recovery for Holders of Class 3 Claims.

For Class 3 Claim Holders, under the Plan such Holders may receive one or a combination of (i) Cash, (ii) a replacement note, (iii) conversion to equity in Reorganized AHUSCO or a contribution of some or all of its Claim into the capital of Reorganized AHUSCO, and/or (iv) Reinstatement. Accordingly, Holders of Claims in Class 3 should not assume that they will receive Cash, or any particular form, amount, timing, or combination of recovery.

**2.**        No Guarantee of Timing of Recovery for Holders of Class 4 Claims.

For Class 4 Claim Holders, distributions will be made by the Indenture Trustee and may be affected by unpredictable factors.  Therefore, the Debtors cannot guarantee the timing of any recovery on a Class 4 Claim.

**3.**        Certain Tax Implications of the Debtors' Bankruptcy.

Holders of Allowed TruPS Claims should carefully review Article VI of this Disclosure Statement, "Certain U.S. Federal Income Tax Considerations," for a description of certain tax implications of the Plan and the Debtors' Chapter 11 Cases.

### C. Risks Related to the Debtors' Businesses.

**1.**        The Debtors Will Be Subject to the Risks and Uncertainties Associated with the Chapter 11 Cases.

For the duration of the Chapter 11 Cases, the Debtors will be subject to the risks and uncertainties associated with bankruptcy. These risks include the following: (a) ability to develop, confirm, and consummate the Plan; (b) ability to obtain Bankruptcy Court approval with respect to motions filed in the Chapter 11 Cases from time to time; (c) ability of third parties to seek and obtain Bankruptcy Court approval to terminate or shorten the exclusivity period for the Debtors to propose and confirm a chapter 11 plan, to appoint a chapter 11 trustee, or to convert the Chapter 11 Cases to chapter 7 proceedings; and (d) the actions and decisions of the Debtors' creditors and other third parties who have interests in the Chapter 11 Cases that may be inconsistent with the Debtors' plans.

Additionally, the Debtors will need the prior approval of the Bankruptcy Court for transactions outside the ordinary course of business, which may limit the Debtors' ability to respond timely to certain events or take advantage of certain opportunities. Because of the risks and uncertainties associated with the Chapter 11 Cases, the Debtors cannot accurately predict or quantify the ultimate impact of events that occur during the Chapter 11 Cases that may be inconsistent with the Debtors' plans.

**2.**        Operating in Bankruptcy for a Long Period of Time May Harm the Debtors' Businesses.

A long period of operations under Bankruptcy Court protection could have a material adverse effect on the Debtors' liquidity. So long as the proceedings related to the Chapter 11 Cases

20

continue, the Debtors will be required to incur substantial costs for professional fees and other expenses associated with the administration of the Chapter 11 Cases.

**3.** <u>The Debtors' Business Is Subject to Various Laws and Regulations That Can Adversely Affect the Cost, Manner, or Feasibility of Doing Business</u>.

The Debtors' operations are subject to various federal, state and local laws and regulations. Complying with these laws and regulations may extend the length of these Chapter 11 cases, which could materially delay and diminish the recoveries set forth in the Plan.

**4.** <u>The Debtors Could Face Liabilities That Can Adversely Affect the Cost, Manner, or Feasibility of Doing Business.</u>

In the future, the Reorganized Debtors may become parties to litigation. In general, litigation can be expensive and time consuming to bring or defend against. Such litigation could result in settlements or damages that could significantly affect the Reorganized Debtors' financial results. It is also possible that certain parties will commence litigation with respect to the treatment of their Claims under the Plan. It is not possible to predict the potential litigation that the Reorganized Debtors may become party to nor the final resolution of such litigation. The impact of any such litigation on the Reorganized Debtors' businesses and financial stability, however, could be material. Additionally, any Claims not ultimately discharged through a plan of reorganization could be asserted against the reorganized entity and may have an adverse effect on the Reorganized Debtors' financial condition and results of operations.

**D. Disclosure Statement Disclaimer.**

**1.** <u>The Financial Information Contained in This Disclosure Statement Has Not Been Audited</u>.

In preparing this Disclosure Statement, the Debtors and their advisors relied on financial data derived from the Debtors' books and records that was available at the time of such preparation. Although the Debtors have used their reasonable business judgment to ensure the accuracy of the financial information, and any conclusions or estimates drawn from that financial information, provided in this Disclosure Statement, and although the Debtors believe that the financial information herein fairly reflects the financial condition of the Debtors, the Debtors are unable to warrant that the financial information contained herein, or any conclusions or estimates drawn therefrom, is without inaccuracies.

**2.** <u>Information Contained in This Disclosure Statement Is For Soliciting Votes.</u>

The information contained in this Disclosure Statement is for the purpose of soliciting acceptances of the Plan and may not be relied upon for any other purpose.

**3.** <u>This Disclosure Statement Was Not Reviewed or Approved by the SEC.</u>

This Disclosure Statement was not filed with the SEC under the Securities Act or applicable state securities laws. Neither the SEC nor any state regulatory authority has passed

upon the accuracy or adequacy of this Disclosure Statement or the exhibits or the statements contained in this Disclosure Statement.

### 4. This Disclosure Statement May Contain Forward Looking Statements.

This Disclosure Statement may contain "forward looking statements" within the meaning of the "safe harbor" provisions of the Private Securities Litigation Reform Act of 1995, as amended. Statements containing words such as "may," "believe," "anticipate," "expect," "intend," "plan," "project," "projections," "business outlook," "estimate," or similar expressions constitute forward-looking statements and may include, without limitations, information regarding the Debtors' expectations with respect to future events. These forward-looking statements are subject to a number of risks, uncertainties and assumptions, including those risks described in this Article.

### 5. No Legal or Tax Advice Is Provided to You by This Disclosure Statement.

This Disclosure Statement is not legal advice to you. The contents of this Disclosure Statement should not be construed as legal, business or tax advice. Each Holder of a Claim or an Interest should consult his or her own legal counsel, accountant or other applicable advisor with regard to any legal, tax and other matters concerning his, her or its Claim or Interest. This Disclosure Statement may not be relied upon for any purpose other than to determine how to vote on the Plan or object to Confirmation of the Plan.

### 6. No Admissions Made.

The information and statements contained in this Disclosure Statement will neither (a) constitute an admission of any fact or liability by any entity (including, without limitation, the Debtors) nor (b) be deemed evidence of the tax or other legal effects of the Plan on the Debtors, Holders of Allowed Claims or Interests, or any other parties in interest. Without limiting the foregoing, the statements contained in this Disclosure Statement are statements of the Debtors for the purposes of this Disclosure Statement only, and shall not be deemed representations, warranties, admissions, stipulations, or statements of the Debtors or any other party in any capacity for any other reason.

### 7. Failure to Identify Potential Objections.

No reliance should be placed on the fact that a particular Cause of Action or potential objection to a particular Claim or Interest is, or is not, identified in this Disclosure Statement. The Reorganized Debtors may, pursuant to the Plan, object to applicable Claims or Interests after the Effective Date of the Plan irrespective of whether this Disclosure Statement identifies a particular Cause of Action or objection to a Claim.

### 8. No Waiver of Right to Object or Right to Recover Transfers and Assets.

The vote by a Holder of a Claim or Interest for or against the Plan does not constitute a waiver or release of any claims, causes of action or rights of the Debtors (or any entity, as the case may be) to object to that Holder's Claim or Interest, or recover any preferential, fraudulent or other voidable transfer of assets, regardless of whether any claims or causes of action of the Debtors or their Estates are specifically or generally identified in this Disclosure Statement.

22

      **9.**      <u>Information Was Provided by the Debtors and Was Relied Upon by the Debtors' Advisors.</u>

The Debtors' advisors have relied upon information provided by the Debtors in connection with the preparation of this Disclosure Statement. Although the Debtors' advisors have performed certain limited due diligence in connection with the preparation of this Disclosure Statement, they have not independently verified the information contained in this Disclosure Statement.

      **10.**      <u>Potential Exists for Inaccuracies, and the Debtors Have No Duty to Update.</u>

The statements contained in this Disclosure Statement are made by the Debtors as of the date of this Disclosure Statement, unless otherwise specified in this Disclosure Statement, and the delivery of this Disclosure Statement after the date of this Disclosure Statement does not imply that there has not been a change in the information set forth in this Disclosure Statement since that date. While the Debtors have used their reasonable business judgment to ensure the accuracy of all of the information provided in this Disclosure Statement and in the Plan, the Debtors nonetheless cannot, and do not, confirm the current accuracy of all statements appearing in this Disclosure Statement. Further, although the Debtors may subsequently update the information in this Disclosure Statement, the Debtors have no affirmative duty to do so unless ordered to do so by the Bankruptcy Court.

      **11.**      <u>No Representations Outside This Disclosure Statement are Authorized.</u>

No representations concerning or relating to the Debtors, the Chapter 11 Cases, or the Plan are authorized by the Bankruptcy Court or the Bankruptcy Code, other than as set forth in this Disclosure Statement. Any representations or inducements made to secure your acceptance or rejection of the Plan that are other than as contained in, or included with, this Disclosure Statement should not be relied upon by you in arriving at your decision. You should promptly report unauthorized representations or inducements to counsel to the Debtors and the U.S. Trustee.

## ARTICLE VI.
## CERTAIN U.S. FEDERAL INCOME TAX CONSIDERATIONS

The following discussion summarizes certain U.S. federal income tax considerations relevant solely to Holders of Allowed TruPS Claims in connection with the implementation of the Plan. This summary does not address U.S. federal income tax considerations that may be relevant to the Debtors or to the Holders of Allowed Prepetition Facility Claims in connection with the implementation of the Plan. Holders of Allowed Prepetition Facility Claims are strongly urged to consult their own tax advisors regarding the applicable U.S. federal, state, local, and foreign income and other tax consequences in connection with the Plan. In addition, the following discussion does not address the U.S. federal income tax consequences to Holders of Claims that are not entitled to vote on the Plan. The U.S. federal income tax consequences of the Plan are complex and are subject to significant uncertainties.

This summary does not address all aspects of U.S. federal income taxation that may be relevant to a particular Holder of an Allowed TruPS Claim in light of such Holder's particular facts and circumstances. In addition, this summary addresses only U.S. federal income taxes. Thus, the following discussion does not address foreign, state, or local tax consequences, or any

estate, gift, or other non-income tax consequences, of the Plan, nor does it purport to address the U.S. federal income tax consequences of the Plan to Holders of Allowed TruPS Claims that are subject to special treatment under the Internal Revenue Code of 1986, as amended (the "IRC") (including, for example, Persons who are related to the Debtors within the meaning of the IRC, Holders liable for the alternative minimum tax, Holders whose functional currency is not the U.S. dollar, Holders that received their Allowed TruPS Claims as compensation, broker dealers, banks, mutual funds, insurance companies, financial institutions, foreign government investors, small business investment companies, regulated investment companies, tax-exempt organizations, governmental entities, pass-through entities such as partnerships or S corporations and investors therein, and Holders of Allowed TruPS Claims who are themselves in bankruptcy).  Accordingly, this summary should not be relied upon for purposes of determining the specific tax consequences of the Plan with respect to a particular Holder of an Allowed TruPS Claim.

If a partnership (including any entity or arrangement treated as a partnership for U.S. federal income tax purposes) holds an Allowed TruPS Claim, the tax treatment of a partner or other investor in such partnership will generally depend upon the status of the partner or investor and the activities of the partnership.  If you are a partner or other investor in a partnership holding an Allowed TruPS Claim, you should consult your tax advisors.

For purposes of this discussion, a "U.S. Holder" is a beneficial owner of an Allowed TruPS Claim that is: (A) an individual citizen or resident of the United States for U.S. federal income tax purposes; (B) a corporation (or other entity treated as a corporation for U.S. federal income tax purposes) created or organized under the laws of the United States, any state thereof or the District of Columbia; (C) an estate the income of which is subject to U.S. federal income taxation regardless of the source of such income; or (D) a trust (1) if a court within the United States is able to exercise primary jurisdiction over the trust's administration and one or more United States persons have authority to control all substantial decisions of the trust or (2) that has a valid election in effect under applicable Treasury Regulations to be treated as a United States person (as defined in the IRC), and a "Non-U.S. Holder" is a Holder (other than an entity treated as a partnership for U.S. federal income tax purposes) that is not a U.S. Holder.

The following discussion assumes that the Plan will be implemented as described herein and does not address the tax consequences if the Plan is not carried out.  This discussion further assumes that (i) the Capital Securities constitute debt for U.S. federal income tax purposes and (ii) AHUSCO is the sole obligor of such debt for U.S. federal income tax purposes.

This summary of the U.S. federal income tax consequences of the Plan is not binding on the Internal Revenue Service ("IRS"), and no ruling will be sought or has been sought from the IRS with respect to any of the tax aspects of the Plan, no opinion of counsel has been obtained or will be obtained by the Debtors with respect thereto, and no tax opinion is given by this Disclosure Statement.  The U.S. federal income tax consequences of certain aspects of the Plan may therefore be uncertain due to the lack of applicable legal authority and may be subject to administrative or judicial interpretations that differ from the discussion below.

The following discussion is not exhaustive and the U.S. federal income tax consequences to each Holder of an Allowed TruPS Claim will differ and will depend on factors specific to each such Holder, including (A) whether the Holder's Allowed TruPS Claim (or portion thereof)

24

constitutes a claim for principal or interest; (B) the origin of the Holder's Allowed TruPS Claim; (C) whether the Holder reports income using the accrual or cash basis method; (D) whether the Holder receives distributions under the Plan in more than one taxable year; (E) whether the Holder has previously included in income any accrued but unpaid interest with respect to the Allowed TruPS Claim; and (F) whether the Holder has previously taken a bad debt deduction or otherwise recognized a loss with respect to the Allowed TruPS Claim. The discussion is not a substitute for careful tax planning and professional tax advice based upon the individual circumstances of each Holder of an Allowed TruPS Claim. Accordingly, each Holder of an Allowed TruPS Claim is strongly urged to consult with its own tax advisor regarding the U.S. federal, state, local, and foreign income and other tax consequences of the Plan.

Finally, a substantial amount of time may elapse between the confirmation date and the receipt of a final distribution under the Plan. Events subsequent to the date of this Disclosure Statement, such as additional tax legislation, court decisions or administrative changes, could affect the U.S. federal income tax consequences of the Plan and the transactions contemplated thereunder.

### A. Certain U.S. Federal Income Tax Consequences of the Plan to U.S. Holders of Allowed TruPS Claims

#### 1. In General

In accordance with the Plan, Allowed TruPS Claims are expected to be discharged in exchange for a cash pool of $20 million. Each U.S. Holder of an Allowed TruPS Claim is therefore expected to recognize gain or loss upon consummation of the Plan equal to the difference between the "amount realized" by such U.S. Holder and such U.S. Holder's adjusted tax basis in his, her or its Allowed TruPS Claim (other than any tax basis attributable to accrued but unpaid interest). The amount realized will include the amount of any Cash received from the Debtor, less the amount (if any) allocable to accrued but unpaid interest, as discussed below under the heading "Accrued Interest." Any such gain or loss realized by a U.S. Holder generally should constitute capital gain or loss to such U.S. Holder, unless such Allowed TruPS Claim is not a capital asset in the hands of such U.S. Holder. If an Allowed TruPS Claim is a capital asset and it has been held for more than one year, the U.S. Holder is expected to realize long-term capital gain or loss. The deductibility of capital losses is subject to limitations.

#### 2. Accrued Interest

A U.S. Holder of an Allowed TruPS Claim generally will recognize ordinary income to the extent that such Holder receives Cash that is allocable to accrued but unpaid interest that such Holder has not yet included in its income. If an Allowed TruPS Claim includes interest, and if the U.S. Holder receives less than the amount of the Allowed TruPS Claim pursuant to the Plan, the U.S. Holder must allocate the Plan consideration between principal and interest. The Plan provides that all distributions to a U.S. Holder of an Allowed TruPS Claim will apply first to the principal amount of such Claim until such principal amount is paid in full and then to any interest accrued on such Claim prior to the Petition Date. There is no assurance, however, that the IRS will respect this treatment and will not determine that all or a portion of amounts distributed to such U.S. Holder, and attributable to principal under the Plan, is properly allocable to interest, or that another

25

treatment applies for U.S. federal income tax purposes.  U.S. Holders of Allowed TruPS Claims are urged to consult their own tax advisors in this regard.  If the Plan consideration allocable to interest with respect to an Allowed TruPS Claim is less than the amount that the U.S. Holder has previously included as interest income, the previously included but unpaid interest may be deducted, generally as a loss.

### 3.     Market Discount

A U.S. Holder that purchased its Allowed TruPS Claims from a prior holder at a "market discount" (relative to the principal amount of the Allowed TruPS Claims at the time of acquisition) may be subject to the market discount rules of the IRC.  In general, a debt instrument is considered to have been acquired with "market discount" if the holder's adjusted tax basis in the debt instrument is less than (a) its stated principal amount or (b) in the case of a debt instrument issued with original issue discount, its adjusted issue price, in each case, by at least a *de minimis* amount.

Under the market discount rules, the U.S. Holder is required to treat any gain on the sale, exchange, retirement or other disposition of the Allowed TruPS Claim (other than in respect of amounts which constitute accrued but unpaid interest) as ordinary income to the extent of the market discount that the U.S. Holder has not previously included in income and which is treated as having accrued on the Allowed TruPS Claim at the time of its payment or disposition.

### 4.     Bad Debt Deduction

A U.S. Holder who receives in respect of an Allowed TruPS Claim an amount less than the U.S. Holder's tax basis in the Claim may be entitled in the year of receipt (or in an earlier or later year) to a bad debt deduction in some amount under IRC Section 166(a).  The rules governing the character, timing and amount of bad debt deductions place considerable emphasis on the facts and circumstances of the U.S. Holder, the obligor and the instrument with respect to which a deduction is claimed.  U.S. Holders of Allowed TruPS Claims are therefore urged to consult their tax advisors with respect to their ability to take such a deduction.

### B.  Certain U.S. Federal Income Tax Consequences of the Plan to Non-U.S. Holders of Allowed TruPS Claims

A Non-U.S. Holder generally will not be subject to U.S. federal income tax with respect to Cash received in exchange for Allowed TruPS Claims, unless (i) such Non-U.S. Holder is engaged in a trade or business in the United States to which income, gain or loss from the exchange is "effectively connected" for U.S. federal income tax purposes, or (ii) if such Non-U.S. Holder is an individual, such Non-U.S. Holder is present in the United States for 183 days or more during the taxable year of the exchange and certain other requirements are met.

### C.  FATCA

Under Sections 1471 to 1474 of the IRC (commonly referred to as the Foreign Account Tax Compliance Act ("FATCA")), unless otherwise subject to an exception, foreign financial institutions and certain other foreign entities must report certain information with respect to their U.S. account holders and investors or be subject to 30% withholding on the receipt of "withholdable payments."  For this purpose, "withholdable payments" are generally U.S. source

26

payments of fixed or determinable, annual or periodical income (including interest).  FATCA withholding will apply even if the applicable payment would not otherwise be subject to U.S. federal nonresident withholding tax.  Each Non-U.S. Holder should consult its own tax advisor regarding the possible impact of these rules.

### D.  Information Reporting and Back-Up Withholding.

Generally, information reporting requirements will apply to all payments or distributions under the Plan, unless you are an exempt recipient.  Additionally, a Holder may be subject to backup withholding at applicable rates, unless the Holder (1) is a person exempt from backup withholding and, when required, demonstrates this or (2) timely provides a correct taxpayer identification number ("TIN") (generally in the form of a properly executed IRS Form W-9 (or a suitable substitute form)) for a U.S. Holder, or applicable IRS Form W-8 (or a suitable substitute form) for a Non-U.S. Holder (or otherwise establishes such Non-U.S. Holder's eligibility for an exemption) and timely provides the other information, makes the representations required by such form and complies with the other requirements of the backup withholding rules.  A Holder that does not timely provide a correct TIN also may be subject to penalties imposed by the IRS.  Backup withholding is not an additional tax.  Any amounts withheld under the backup withholding rules will be allowed as a refund or a credit against your U.S. federal income tax liability provided the required information is properly furnished to the IRS.

## ARTICLE VIII.
## RECOMMENDATION AND CONCLUSION

For all of the reasons set forth in this Disclosure Statement, the Debtors believe that the Confirmation and consummation of the Plan is preferable to all other alternatives.  Consequently, the Debtors urge all Holders of Claims in Classes 3 and 4, the only Classes entitled to vote on the Plan, to vote to accept the Plan and to evidence their acceptance by duly completing and returning their ballots so that they will be received on or before the Voting Deadline.

Dated: _____, 2026

Respectfully submitted,

/s/ *DRAFT*

By: Peter Kravitz
Chief Restructuring Officer